*Alvarez v. Garland*

# In the

# United States Court of Appeals

# for the Second Circuit

———————

AUGUST TERM 2021

No. 22-6021

CARLOS ANIBAL ALVAREZ,

*Petitioner,*

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

———————

SUBMITTED: MARCH 22, 2022

DECIDED: MAY 5, 2022

———————

Before: CABRANES, RAGGI, and CARNEY, *Circuit Judges.*

———————

Petitioner Carlos Anibal Alvarez, who challenges an order of removal based on his violation of a court protection order, *see* 8 U.S.C. § 1227(a)(2)(E)(ii), moves for leave to proceed *in forma pauperis*, appointment of counsel, and a stay of removal. Respondent, in turn, moves to expedite the petition. Petitioner's *in forma pauperis* motion requires us to consider whether his claim of agency error in failing to apply a modified categorical approach to removal pursuant to § 1227(a)(2)(E)(ii) has an arguable basis in law or fact. Because we conclude that it does not, we are compelled to dismiss his petition

pursuant to 28 U.S.C. § 1915 (e)(2)(B)(i). In explaining that conclusion, we reiterate in this published opinion what we have previously deemed sufficiently clear to state summarily, *i.e.*, that an immigration court's removal determination pursuant to § 1227(a)(2)(E)(ii) is not made by reference to a "categorical" or "modified categorical" standard but, rather, by a circumstance-specific assessment of the particular protection order to which the alien was subject and a court's finding that the alien violated that order.

PETITION FOR REVIEW DISMISSED, AND ALL MOTIONS DENIED AS MOOT.

———

CARLOS ANIBAL ALVAREZ, *pro se*, Batavia, New York (Robert F. Graziano, *on Petitioner's reply brief in further support of motion to proceed* in forma pauperis, Niagara Falls, New York), *for Petitioner.*

RODOLFO D. SAENZ, Trial Attorney (Zoe J. Heller, Senior Litigation Counsel, *on the brief*), *for* Brian M. Boynton, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C.

———

REENA RAGGI, *Circuit Judge*:

Carlos Anibal Alvarez, a Dominican national and lawful permanent resident of the United States, petitions for review of a Board of Immigration Appeals ("BIA") decision upholding an Immigration Judge's ("IJ") ruling (1) ordering Alvarez's removal

from this country for violating a court protection order, *see* 8 U.S.C. § 1227(a)(2)(E)(ii); and (2) denying him discretionary relief from deportation, *see id.* § 1229b(a). *See In re Carlos Anibal Alvarez*, No. A 038 919 528 (B.I.A. Dec. 29, 2021), *aff'g* No. A 038 919 528 (Immig. Ct. Batavia, N.Y. Aug. 6, 2021). Now before the court are Alvarez's motions for leave to pursue his petition *in forma pauperis,* appointment of counsel, and a stay of removal, as well as respondent's motion to expedite the petition.

In reviewing an *in forma pauperis* motion, a court first considers whether the claims being pursued have an arguable basis in law or fact because, if they do not, the court must not simply deny the motion; it must dismiss the appeal or petition for review as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i). Upon such review here, we conclude that Alvarez's petition has no arguable basis in law or fact. Insofar as he asserts error in the agency's failure to employ a "modified categorical"[1] standard to determine his removability under § 1227(a)(2)(E)(ii), that argument is precluded by the plain language of the statute, as well as by decisions from the Supreme Court, this court, and other courts of appeals. Thus, in this published opinion, we reiterate that which we have previously thought sufficiently clear to say summarily: removability pursuant to § 1227(a)(2)(E)(ii) is not determined by a categorical, or even modified categorical, standard, but by a circumstance-specific assessment of the protection order to which the alien was subject and of a court's (usually a state court's)

---

[1] *See infra* at 20–21 (discussing the "categorical" and "modified categorical" standards).

3

particular finding that the alien violated that order.[2]  We conclude that Alvarez's remaining challenges to removal similarly lack an arguable basis in fact or law and, accordingly, we dismiss his petition and deny the parties' motions as moot.

## BACKGROUND

On May 3, 1984, Alvarez, a then-16 year old native and citizen of the Dominican Republic, entered the United States at Puerto Rico. While in this country, he has generally lived in the New York area and most frequently been employed as an auto mechanic.  He has, from time to time, abused controlled substances.  Alvarez has married twice and maintained three non-marital relationships, by which he has, in total, five children.

One of Alvarez's non-marital relationships was with Angela Escolastico, who, on several occasions, accused Alvarez of assault, leading to various arrests, convictions, and the entry of New York court protection orders.  Alvarez's violation of one of those orders, issued in 2001, is the basis for the removal decision that he now petitions this court to review.  Accordingly, we begin by summarizing facts pertinent to the entry of that 2001 protection order and to its violation, as well as to Alvarez's ensuing criminal history.  We then proceed to detail Alvarez's immigration proceedings.

---

[2] *See Garcia v. Wilkinson*, 847 F. App'x 50 (2d Cir. 2021) (discussed *infra* at 31).

4

## I.  Alvarez's Violation of the 2001 Protection Order

### A.  Events Leading to Entry of the 2001 Order

The 2001 protection order here at issue was entered following Alvarez's guilty plea and conviction that year for first-degree contempt of court.  *See* N.Y. Penal L. § 215.51.[3]  That contempt was

---

[3] New York first-degree contempt is a divisible crime, subdivision (b) of which makes a person guilty when, "in violation of . . . an order of protection issued by a court of competent jurisdiction in this or another state," the person

(i)  intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm or by means of a threat or threats; or

(ii)  intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of physical injury, serious physical injury or death by repeatedly following such person or engaging in a course of conduct or repeatedly committing acts over a period of time; or

(iii)  intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of physical injury, serious physical injury or death when he or she communicates or causes a communication to be initiated with such person by mechanical or electronic means or otherwise, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication; or

(iv)  with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, repeatedly makes telephone calls to such person, whether or not a

evidenced by Alvarez's 2001 violation of an earlier, 1999 protection order that had required Alvarez to refrain from, *inter alia*, assaulting Ms. Escolastico.[4]  In a sworn affidavit to support Alvarez's 2001 arrest for assault, a New York City police officer stated that Ms. Escolastico had reported that, on May 19, 2001, Alvarez came to her apartment, "(i) punched [her] numerous times on the head and arm, (ii) grabbed [her] and slammed her on the floor, (iii) . . . threatened to throw her out of the window, (iv) . . . put a cable cord around [her] neck and choked her," and (v) threatened to kill her.  Admin. R. 833–34.  Ms. Escolastico further told the officer that, on May 25, 2001, Alvarez had "forced his way" into her apartment and threatened "to kill her if she called the police."  *Id.*

---

conversation ensues, with no purpose of legitimate communication; or

(v)    with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, strikes, shoves, kicks or otherwise subjects such other person to physical contact or attempts or threatens to do the same; or

(vi)    by physical menace, intentionally places or attempts to place a person for whose protection such order was issued in reasonable fear of death, imminent serious physical injury or physical injury.

N.Y. Penal L. § 215.51(b).

[4] The 1999 protection order was entered after Alvarez's arrest that year for third-degree assault of Ms. Escolastico.  *See* N.Y. Penal L. § 120.00.  The record does not contain the 1999 protection order.  What it does show is that Alvarez's 1999 assault charge, and an unrelated 1999 charge for third-degree possession of a forged instrument, *see id.* § 170.20, were dismissed on October 17, 2001, following his 2001 contempt conviction.

When interviewed about these events in 2001 for a pre-sentence report, Alvarez claimed that his actions had been "misrepresented" and that he had only tried "to speak" with Ms. Escolastico "in order to reconcile." *Id.* at 1471–72.[5] The state probation department nevertheless reported "a severe case of domestic violence," in which Alvarez failed to "take full responsibility for his actions," and recommended some term of incarceration. *Id.* at 1476.

On September 20, 2001, a New York State court sentenced Alvarez to six months' imprisonment and five years' probation for his contempt of the 1999 protection order. Two weeks later, on October 5, 2001, the court issued another protection order, to remain in effect for five years, *i.e.*, until October 4, 2006. *See* N.Y. Crim. Proc. § 530.12. That 2001 order, which is here at issue, prohibited Alvarez, directly or through any third party, from having "contact of any kind whatsoever" with Ms. Escolastico. Admin. R. 134. Specifically, Alvarez was ordered (1) to "[s]tay away" from Ms. Escolastico's person, as well as from her home, school, business, or place of employment; (2) to "[r]efrain from communication" with Ms. Escolastico, whether "by mail or by telephone, e-mail, voice-mail or other electronic means"; and (3) to "[r]efrain from assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats, or any criminal offense against" Ms. Escolastico. *Id.*

---

[5] In testifying before the IJ about his 2001 arrest, Alvarez acknowledged having "hit [Ms. Escolastico] with [his] hand on her face" and having pushed or shaken her, *id.* at 445–46, though elsewhere he would characterize his conduct as "verbal violence," *id.* at 727–28.

## B. Alvarez's Contempt Conviction for Violating the 2001 Order

Within months of Alvarez's release from prison, and while he was on probation for his first contempt conviction, he violated the 2001 protection order. A seven-count indictment, returned on August 5, 2002, charged that on or about and between April 20, 2002, and June 8, 2002, Alvarez engaged in conduct toward Ms. Escolastico constituting aggravated, first-degree, and second-degree contempt of court, as well as third-degree assault and stalking. *See* N.Y. Penal L. §§ 120.00, 120.50, 215.50, 215.51(b)(ii), 215.51(b)(v), 215.52.[6] On October 8, 2002, Alvarez pleaded guilty to Count Two in satisfaction of the indictment. *See* Admin. R. 1448. Count Two charged him with first-degree contempt in violation of § 215.51(b)(v),[7] insofar as,

> on or about June 8, 2002, . . . with intent to harass, annoy, threaten and alarm Angela Escolastico, for whose protection the order was issued, [Alvarez] struck, shoved, and otherwise subjected Angela Escolastico to physical contact and attempted and threatened to do the same.

*Id.* at 1451.

On November 1, 2002, the court sentenced Alvarez to a term of 18-months-to-3-years' incarceration for this contempt.

---

[6] The aggravated contempt and third-degree assault counts both charged Alvarez with causing Ms. Escolastico actual physical injury—intentionally or recklessly for purposes of aggravated contempt, *see id.* § 215.52(1), and intentionally for purposes of third-degree assault, *see id.* § 120.00(1).

[7] Quoted *supra* at 5 n.3.

## II.    Alvarez's Subsequent Arrests and Convictions

In the years after Alvarez's release from prison on his second contempt conviction, he was arrested several times. Because these arrests were considered by the immigration court in denying Alvarez discretionary relief from removal, we briefly summarize the charges and their resolutions. Except as noted, the underlying facts are not part of the record before us.

In June 2005, Alvarez was arrested for and pleaded guilty to disorderly conduct, *see* N.Y. Penal L. § 240.20, and sentenced to time served.

In November 2007, Alvarez was arrested for second-degree menacing, *id.* § 120.14; second-degree reckless endangerment, *id.* § 120.20; and fourth-degree criminal possession of a weapon, *id.* § 265.01, based on conduct toward his then-sister-in-law. In satisfaction of these charges, Alvarez pleaded guilty to and was convicted of second-degree harassment, *id.* § 240.26; was sentenced to 15 days' imprisonment; and consented to the entry of a two-year protection order for the victim.

Finally, in May 2010, Alvarez, together with others, was arrested for first-degree robbery, *id.* § 160.15, and related charges. At a 2015 retrial following a mistrial, Alvarez was found guilty and sentenced to 12 years' imprisonment.[8] Alvarez served this term in

---

[8] According to Alvarez's pre-sentence report, on May 15, 2010, the defendants followed a target car and, when it stopped, approached the vehicle. After entering the vehicle, Alvarez directed the operator, at knifepoint, to start driving. When the driver refused, Alvarez grabbed a bookbag (containing a laptop computer and

New York State custody until November 13, 2020, when he was transferred to Immigration and Customs Enforcement ("ICE") custody. On October 19, 2021, while Alvarez was in ICE custody, the New York Appellate Division, First Department, reversed his robbery conviction upon finding that he had not requested or consented to a mistrial without prejudice. *See People v. Lantigua*, 198 A.D.3d 514, 514 (1st Dep't 2021) ("Double jeopardy bars a retrial except as to a defendant who has requested or consented to the mistrial.").

### III. Alvarez's Immigration Proceedings

In part because of the time required to resolve the referenced robbery charge, it took immigration authorities more than fifteen years to render the removal decision that Alvarez now petitions this court to review. We summarize these immigration proceedings only as necessary to explain our decision to dismiss Alvarez's petition and to deny his various motions as moot.

### A. Initiation of Removal Proceedings and Concession of Removability

In July 2006, the Department of Homeland Security ("DHS") charged Alvarez with removability under Section 237(a)(2)(E)(ii) of

---

a camera) from the car and fled the scene with his confederates. When police stopped the defendants' car, they recovered from therein a knife and the bag taken from the victims' car.

Before the IJ, Alvarez disputed these events, insisting that he had been involved in a hit-and-run accident, that the driver of the other car was drunk and on drugs, and that the police falsely accused him of robbery because of his criminal history.

the Immigration and Nationality Act ("INA").[9]  That section renders statutorily eligible for removal an alien who, while admitted to the United States,

> is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person . . . for whom the protection order was issued.

8 U.S.C. § 1227(a)(2)(E)(ii).  The notice to appear on this charge identified Alvarez's November 2002 New York State conviction for first-degree criminal contempt as the ground for removal.

Alvarez first appeared before an IJ in March 2008, at which time his removal hearing was continued to afford him time to secure counsel.[10]  When Alvarez next appeared before the IJ in May 2008, he was assisted not by an attorney but by a Department of Justice accredited representative, Reverend Robert Vitaglione.[11]  On May 29, 2008, Rev. Vitaglione conceded Alvarez's removability under § 1227(a)(2)(E)(ii), specifically admitting, *inter alia,* that on November 1, 2002, a New York court had found that, while Alvarez was enjoined under a protection order entered by a competent New York court, he had engaged in conduct violating a portion of the order involving

---

[9] Throughout this opinion, we refer to the statute as codified at 8 U.S.C. § 1227(a)(2)(E)(ii), rather than by its INA section number.

[10] Although the notice to appear is dated July 19, 2006, it appears not to have been served on Alvarez until March 19, 2008.

[11] *See* 8 C.F.R. § 1292.12 (providing for accreditation of non-attorneys to represent clients before immigration courts).

protection against credible threats of violence, repeated harassment, or bodily injury to the person for whom the protection order was issued.

## B. Applications for Cancellation of Removal and to Challenge Removability

By the time Alvarez next appeared before the IJ in September 2008, he had discharged Rev. Vitaglione and retained an attorney who, soon after, filed an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(a).[12] The application was still pending in May 2010 when Alvarez was arrested for robbery, after which his immigration case was administratively closed for a decade.

Upon reopening of his immigration proceedings in October 2020, Alvarez, through new counsel, for the first time sought to challenge his removability under § 1227(a)(2)(E)(ii) and to withdraw his previous concession. The IJ orally denied Alvarez's request, and, on January 6, 2021, after hearing testimony from Alvarez and various supporters, also denied his application for cancellation of removal. *See In re Carlos Anibal Alvarez*, No. A 038 919 528 (Immig. Ct. Batavia, N.Y. Jan. 6, 2021). Specifically, the IJ found Alvarez statutorily ineligible for cancellation in light of his 2015 conviction for robbery,

---

[12] Under § 1229b(a), a legal permanent resident may be eligible for cancellation of removal if he "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony."

an aggravated felony.[13]   Moreover, the IJ observed that, even if Alvarez were eligible, cancellation would appropriately be denied as an exercise of discretion.

## C. First Appeal to BIA

On appeal to the BIA, Alvarez, through counsel, argued that the IJ had erred in accepting (and, later, not allowing him to withdraw) his concession of removability because (1) Rev. Vitaglione had been ineffective in making such a concession on his behalf;[14] and (2) the record was devoid of any document that, under the categorical approach, would permit a conclusion that clear and convincing evidence established his removability under § 1227(a)(2)(E)(ii). Alvarez further argued that (3) the IJ's assessment of removability did not comport with the framework established by the BIA in its intervening decision in *Matter of Obshatko*, 27 I. & N. Dec. 173, 176–77 (B.I.A. 2017) (stating that "Immigration Judge should decide (1) whether a State court 'determine[d]' that the alien 'has engaged in conduct that violates the portion of a protection order that involve[d]

---

[13] Relying on *Matter of J.M. Acosta*, 27 I. & N. Dec. 420 (B.I.A. 2018), the IJ determined that Alvarez's robbery conviction was final for immigration purposes, notwithstanding a pending appeal.  That conclusion has since been undermined by this court's holding in *Brathwaite v. Garland*, 3 F.4th 542, 555 (2d Cir. 2021) (rejecting *J.M. Acosta* interpretation of finality requirement as unreasonable), as the agency acknowledged in its later review of Alvarez's removability, discussed *infra* at 15 & n.15.

[14] The record indicates that in May 2011—approximately three years after Rev. Vitaglione assisted Alvarez in this case—the BIA declined to renew his accreditation as a non-lawyer representative under then-operative 8 C.F.R. § 1292.2(d) in light of a "significant record of inadequate representation." Admin. R. 19–23.

protection against credible threats of violence, repeated harassment, or bodily injury' and (2) whether the order was 'issued for the purpose of preventing violent or threatening acts of domestic violence'" (brackets in original) (quoting 8 U.S.C. § 1227(a)(2)(E)(ii))).

Concluding that any consideration of these arguments required further record development, on June 30, 2021, the BIA remanded Alvarez's case with instructions that the IJ (1) "articulate whether [Alvarez] established egregious circumstances that would allow him to re-plead to the notice to appear"; and (2) "further consider whether the DHS met its burden to demonstrate [Alvarez's] removability under [§ 1227(a)(2)(E)(ii)]," specifically "identify[ing] any evidence relied on and explain[ing] the reasons for [the IJ's] conclusions in his decision." *In re Carlos Anibal Alvarez*, No. A 038 919 528 (B.I.A. June 30, 2021).

### D. The IJ Decision on Remand

Following further briefing by the parties, the IJ issued a detailed decision sustaining both Alvarez's removability under § 1227(a)(2)(E)(ii) and the denial of cancellation of removal. *See In re Carlos Anibal Alvarez*, No. A 038 919 528 (Immig. Ct. Batavia, N.Y. Aug. 6, 2021).

As to Alvarez's removability, the IJ applied the two-pronged framework articulated in *Matter of Obshatko*, 27 I. & N. Dec. at 176–77, and, reviewing the totality of the evidence, found, first, that DHS had satisfactorily shown that the October 2001 protection order was issued for the purpose of preventing actual or threatened acts of domestic violence. Second, construing every portion of the 2001 order as protecting against "'credible threats of violence, repeated

14

harassment, or bodily injury,'" the IJ found that DHS had necessarily shown that Alvarez's November 2002 contempt conviction was for the sort of protection-order violation specified in § 1227(a)(2)(E)(ii). *In re Alvarez*, No. A 038 919 528, at 11–12. (quoting 8 U.S.C. § 1227(a)(2)(E)(ii)). In light of these findings, the IJ then concluded that Alvarez could not show that he had been prejudiced by any deficiencies in Rev. Vitaglione's assistance so as to demonstrate egregious circumstances warranting Alvarez's withdrawal of his concession of removability and repleading.

As to cancellation of removal, the IJ first determined that, contrary to his earlier ruling, Alvarez was statutorily eligible for such relief under 8 U.S.C. § 1229b(a).[15] He then made careful credibility findings, crediting Alvarez's testimony in part and that of his witnesses in full, but expressing "grave[] concern[]" about Alvarez's minimization of his past criminal conduct. *Id.* at 15. Finally, the IJ identified factors favorable to Alvarez—*e.g.*, extensive family ties in the United States, long residence in this country, and regular employment when not incarcerated—as well as factors unfavorable to him—*e.g.*, extensive criminal history; repeated violations of protection orders, probation, and parole; history of drug abuse; and minimal hardship to family from his deportation—and concluded that, on balance, the latter outweighed the former and, therefore, decided not to exercise his discretion in favor of cancellation.

---

[15] On remand, the IJ acknowledged that, in light of this court's intervening decision in *Brathwaite v. Garland*, 3 F. 4th at 555, Alvarez's robbery conviction could not be deemed final for immigration purposes while still on appeal.

15

### E. Second Appeal to BIA

On appeal, the BIA upheld the IJ's rulings. *See In re Carlos Anibal Alvarez*, No. A 038 919 528 (B.I.A. Dec. 29, 2021). The BIA stated that, with respect to § 1227(a)(2)(E)(ii) removability, the IJ had correctly applied the *Obshatko* framework; construed the various provisions of the 2001 protection order; and concluded therefrom that a New York court, in finding Alvarez guilty of first-degree contempt for violating that order, had necessarily found him to have violated the sort of protection-order provision referenced in § 1227(a)(2)(E)(ii). Having thus found Alvarez's removability established by clear and convincing evidence independent of Alvarez's May 2008 concession, the BIA deemed it unnecessary to consider whether egregious circumstances warranted allowing the withdrawal of that concession and repleading.

With respect to cancellation of removal, the BIA concluded that the IJ had correctly identified "positive and negative factors and engaged in an individualized analysis of [Alvarez's] claim for relief." *Id.* at 2. Further, it concluded that the IJ had permissibly considered the facts underlying Alvarez's arrest for robbery, even though his subsequent conviction was reversed on appeal. In any event, the BIA concluded that because the robbery conviction was "merely one of many negative factors" informing the denial of cancellation, its reversal did "not significantly change, for purposes of discretion, the cumulative negative weight of his extensive criminal record." *Id.* at 5 n.4. Accordingly, the BIA upheld the IJ's denial of cancellation of removal.

16

Proceeding *pro se,* Alvarez timely petitioned this court for review of the BIA's December 2021 decision, and moved for leave to pursue the petition *in forma pauperis,* for appointment of counsel, and for a stay of removal. The government opposed a stay and moved to expedite the appeal, whereupon retained counsel filed a reply on Alvarez's behalf.[16] The parties' cross-motions are now before this panel.

## DISCUSSION

### I. Jurisdiction and Standards of Review

#### A. Jurisdiction

Certain jurisdiction-stripping provisions of 8 U.S.C. § 1252(a) limit our ability to review BIA decisions to "constitutional claims or questions of law." That is the case for challenged denials of cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D). With respect to such a denial, we are obliged to dismiss any claim by Alvarez that "essentially disputes the correctness of [the agency's] factfinding or the wisdom of [its] exercise of discretion." *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39 (2d Cir. 2008) (citation omitted). On the other hand, our jurisdiction to review questions of law can include a claim that the agency applied "a legally erroneous standard" in denying discretionary relief from a final order of removal. *Id.* (citation omitted).

---

[16] Retained counsel appeared solely for the purpose of filing this reply brief.

17

## B. Standard of Review for Orders of Removal

Alvarez's challenge to his § 1227(a)(2)(E)(ii) order of removal is not subject to one of the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a).[17] Our review of Alvarez's challenge to such a removal order is instead guided by 8 U.S.C. § 1252(b), which states that, under the substantial evidence standard, the agency's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4). We nevertheless "review *de novo* questions of law and the application of law to undisputed fact." *Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008); *see also Prenga v. Sessions*, 745 F. App'x 392, 394 (2d Cir. 2018).

## C. Frivolous Claims

Because Alvarez moves, among other things, for leave to pursue his petition to this court *in forma pauperis*, we first consider whether, under the review standards just discussed, the petition presents a non-frivolous claim, *i.e.*, a claim with an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1985) (defining "frivolous" claim as one "lack[ing] an arguable basis either in law or in fact"); *Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) (holding that party who advances only "inarguable legal conclusions or fanciful factual allegations" has no plausible argument (brackets and internal quotation marks omitted)). If it does not, we are statutorily obliged

---

[17] Where removal is based on an alien's conviction for certain crimes, jurisdiction is limited in the same manner as review of denial of cancellation of removal—that is, to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(C), (D). But § 1252(a)(2)(C) expressly does not include § 1227(a)(2)(E)(ii) within its scope.

to dismiss the petition. *See* 28 U.S.C. § 1915(e)(2)(B)(i) (stating that court "shall dismiss" case filed *in forma pauperis* if it determines that appeal is "frivolous"). In making that determination, we must be careful not to conflate "[e]asy cases" with "inarguable or fanciful ones," as only the latter warrant dismissal under § 1915(e)(2)(B)(i). *United States v. Davis,* 598 F.3d 10, 13–14 (2d Cir. 2010) (collecting cases drawing distinction). At the same time, we are mindful that a petition may require "research and analysis" and "detailed evaluation" and, nevertheless, warrant dismissal as frivolous. *Hidalgo-Disla v. I.N.S.,* 52 F.3d 444, 447 (2d Cir. 1995).

In considering a challenge to a BIA decision summarily upholding an IJ order of removal or denial of relief from removal, "we review the judgment of the IJ" except "as modified by the BIA's decision." *Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *accord Scarlett v. Barr*, 957 F.3d 316, 327 (2d Cir. 2020) ("To the extent the BIA adopts the IJ's reasoning in denying relief, we review the two decisions in tandem . . . ." (internal quotation marks omitted)). Even where the BIA does not expressly adopt the IJ's decision but, nevertheless, "closely tracks the IJ's reasoning," we consider both opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). Thus, in determining whether Alvarez's petition presents a non-frivolous claim, we consider both the IJ and BIA opinions, but we do not consider challenges to the IJ opinion—such as Alvarez's challenge to the IJ's decision not to allow him to withdraw his concession of removability—that the BIA found unnecessary to rely on or to address in reaching its own decision. *See, e.g., Chery v. Garland*, 16

19

F.4th 980, 983 n.2 (2d Cir. 2021) (declining to consider argument that BIA did not address on appeal).

## D. Discretion To Review Alvarez's Claimed "Modified Categorical" Standard Error

In his counseled reply brief to this panel in support of his stay motion, Alvarez submits that the IJ and BIA erred in failing to apply a modified categorical standard when deciding his removability under § 1227(a)(2)(E)(ii). As is now well established, under the categorical standard devised by the Supreme Court for assessing certain crimes, a court considers "the minimum criminal conduct necessary to satisfy the elements of a crime, without regard to whether the defendant himself engaged in more egregious conduct." *United States v. Scott*, 990 F.3d 94, 104 (2d Cir. 2021) (*en banc*); *see United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (collecting cases discussing categorical approach). A "modified categorical" standard applies to divisible statutes having "multiple alternative elements." *Mathis v. United States*, 579 U.S. 500, 505 (2016). In those circumstances, a court looks first to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505–06. Once that crime is identified, the court uses the categorical standard to determine the minimal criminal conduct necessary to satisfy the elements of that crime. *See United States v. Scott*, 990 F.3d at 104.

It is not entirely clear that Alvarez ever urged a modified categorical standard before the agency. *See Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 120 (2d Cir. 2007) (holding that issue exhaustion is not

20

jurisdictional but still mandatory, subject to waiver).  Before both the IJ and the BIA, Alvarez argued that the IJ's initial finding of removability was erroneous because (1) Rev. Vitaglione was ineffective in conceding removability at a time when the agency was still applying the categorical approach to § 1227(a)(2)(E)(ii) determinations; and (2) the documentary record was insufficient to support a categorical finding of removability.  *See* Admin. R. 11.  Alvarez further argued to the BIA that (3) on remand, the IJ misapplied the subsequently pronounced *Obshatko* standard.  *See id.* at 12–13.  Assuming that this was sufficient "implicitly," if not "explicitly," to question the IJ's interpretative approach, *Adams v. Holder*, 692 F.3d 91, 96 n.2 (2d Cir. 2012),[18] we are nevertheless obliged to dismiss Alvarez's petition because a claim that it was error not to apply the modified categorical approach lacks an arguable basis in law or fact.

### E. *Chevron*

One final point is relevant to our review.  Generally, when a petitioner challenges an agency's interpretation of a statutory provision that the agency administers, "we employ the familiar two step inquiry set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. [837 (1984) ("*Chevron*")]."  *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010).  At the first step, we consider "whether Congress has directly spoken to the precise question at

---

[18] *See Gill v. I.N.S.*, 420 F.3d 82, 86 (2d Cir. 2005) (stating that petitioner is not "limited to the exact contours of his argument below" and that court may consider "subsidiary legal arguments, or arguments by extension, that were not made below").

issue" because, if it has and its intent is clear, "that is the end of the matter." *Nwozuzu v. Holder*, 726 F.3d 323, 326–27 (2d Cir. 2013) (quoting *Chevron*, 467 U.S. at 842). If, and only if, there is "ambiguity" as to what Congress intended by certain language, do we proceed to *Chevron*'s second step, which requires us to "defer to an agency's interpretation of the statute if that interpretation is reasonable." *Id.* at 327.

Without specifically deciding the question, this court has thought it "arguabl[e]" that *Chevron* deference might apply to a BIA decision as to whether to apply a categorical or circumstance-specific approach to removability under 8 U.S.C. § 1227(a)(2)(A)(iii), the INA's "aggravated felony" provision. *See Ming Lam Sui v. I.N.S.*, 250 F.3d 105, 116 n.10 (2d Cir. 2001); *accord Gertsenshteyn v. U.S. Dep't of Just.*, 544 F.3d 137, 145 (2d Cir. 2008) (leaving question open with respect to aggravated felony provision). We need not here decide the propriety of *Chevron* deference because we resolve this case at *Chevron*'s first step, construing the text of § 1227(a)(2)(E)(ii) unambiguously to express Congress's intent for a circumstance-specific, rather than categorical, or even modified categorical, approach to apply to questions of removability under that provision. This conclusion also finds support in pertinent precedents from the Supreme Court, our own court, and other courts of appeal. Thus, while the BIA's own interpretation of § 1227(a)(2)(E)(ii) effectively, if not entirely, accords with our own,[19] there is no need for us to accord it *Chevron* deference

---

[19] *See infra* at 34–35 (discussing *Matter of Obshatko*, in which BIA clearly rejects categorical approach in determining removability under § 1227(a)(2)(E)(ii), *see* 27 I. & N. Dec. at 175, while also seeming to reject circumstance-specific approach for

to conclude that no arguable basis in law or fact supports Alvarez's claim that the agency erred in failing to apply a modified categorical standard to determining his removability.

## II. Alvarez's Argument for a Modified Categorical Standard Lacks an Arguable Basis in Law or Fact

### A. The Text of § 1227(a)(2)(E)(ii)

Title 8 U.S.C. § 1227 identifies numerous classes of person as "deportable" (*i.e.*, removable) from the United States.[20] Some of those classes are defined simply by reference to an alien's immigration status.[21] Others are identified by reference to various "[c]riminal offenses." 8 U.S.C. § 1227(a)(2). A significant number of § 1227(a)(2)'s subparts premise removability on an alien having been "convicted" of a specified crime.[22] But not all. For example,

---

one that "in practical terms" yields same result by looking to "any reliable evidence," *id.* at 176).

[20] "The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, Div. C, 110 Stat. 3009–546, realigned the vocabulary of immigration law, creating a new category of 'removal' proceedings that largely replaces what were formerly exclusion proceedings and deportation proceedings." *Evangelista v. Ashcroft*, 359 F.3d 145, 147 n.1 (2d Cir. 2004) (internal quotation marks omitted).

[21] *See, e.g.*, 8 U.S.C. § 1227(a)(1)(A) (referencing aliens who were "inadmissible" when they entered United States); *id.* § 1227(a)(1)(C)(ii) (referencing persons who violated rules of entry); *see id.* § 1227(a)(1)(D)(i) (referencing persons whose temporary legal permanent resident status has been revoked).

[22] *See, e.g., id.* § 1227(a)(2)(A)(i) (referencing alien "convicted of a [felony] crime involving moral turpitude"); *id.* § 1227(a)(2)(A)(ii) (referencing alien "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme"); *id.* § 1227(a)(2)(A)(iii) (referencing alien "convicted of an aggravated felony"); *id.* § 1227(a)(2)(A)(iv) (referencing alien "convicted" of crime "relating to

§ 1227(a)(2)(B)(ii) states that an alien who "is, or any time after admission has been, a drug abuser or addict is deportable." That section does not require that the abuser or addict have been convicted of any crime. *See id.* Further, and as pertinent here, § 1227(a)(2)(E)(ii) states that an alien whom a court finds to have "engaged in conduct that violates" those provisions of a "protection order" involving certain protections is deportable—again with no mention, much less requirement, of a related criminal conviction.

While we have previously quoted this statute in part, we do so now in its entirety:

> Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an

high speed flight from an immigration checkpoint"); *id.* § 1227(a)(2)(A)(v) (referencing alien "convicted" of failing to register as sex offender); *id.* § 1227(a)(2)(B)(i) (referencing alien "convicted" of certain drug trafficking crimes); *id.* § 1227(a)(2)(C) (referencing alien "convicted" of certain firearm crimes); *id.* § 1227(a)(2)(E)(i) (referencing alien "convicted" of certain crimes of domestic violence, child abuse, child neglect, or child abandonment).

> independent action or as a pendente lite order in
> another proceeding.

*Id.* § 1227(a)(2)(E)(ii).

We construe the quoted text unambiguously to signal Congress's intent for removability under § 1227(a)(2)(E)(ii) to be determined on a circumstance-specific rather than a categorical—or modified categorical—basis. *See generally National Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (stating that where plain language of statute is unambiguous, inquiry "begins with the statutory text, and ends there as well" (citation omitted)); *Nwozuzu v. Holder*, 726 F.3d at 327 (stating that court begins with language of statute and, if "statutory terms are unambiguous," construes statute according to plain meaning of its terms).

As noted *supra* at 20, the categorical and modified categorical standards focus on the minimum conduct necessary to support conviction for a generally applicable crime (or part of a divisible crime), "without regard to" the actual conduct engaged in by a particular defendant. *United States v. Scott*, 990 F.3d at 104. By contrast, § 1227(a)(2)(E)(ii) nowhere references an alien being convicted of any crime to support removability. Rather, the text of § 1227(a)(2)(E)(ii) places singular focus on the particular protection order entered against an alien and that alien's own conduct in violating the order. Whether or not that conduct results in a conviction, the alien is removable under § 1227(a)(2)(E)(ii) so long as the record permits immigration authorities to find that (1) the alien was subject to a court protection order—defined by statute as having been "issued for the purpose of preventing violent or threatening acts

25

of domestic violence"; and (2) a court found the alien to have "engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued." 8 U.S.C. § 1227(a)(2)(E)(ii). This necessarily calls for a circumstance-specific inquiry to determine both whether the alien engaged in conduct that violated the protection order under which he was enjoined and whether his conduct-based violation pertained to a provision of that order involving protection against credible threats of violence, repeated harassment, or bodily injury to a particular person. That immigration authorities' inquiry is guided by what a court—most often a state court—determined about the alien's own conduct does not render the agency's analysis any less circumstance-specific.

Context only reinforces the conclusion we draw from text. *See generally Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 372 (2d Cir. 2022) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." (citation omitted)). As earlier noted, § 1227(a)(2) uses the fact of "conviction" to identify many classes of aliens as removable based on specific criminal offenses. *See supra* 23 & n.22. This includes aliens "convicted of a crime of domestic violence." 8 U.S.C. § 1227(a)(2)(E)(i). But in the very next subpart of § 1227(a)(2)(E), Congress omits any conviction requirement in identifying as also removable those aliens found to have "engaged in conduct" violating specified provisions of the protection orders to which they were subject. *Id.* § 1227(a)(2)(E)(ii). Where Congress uses language in one part of a statute that it omits

26

from another—particularly a closely adjacent other—well-established principles of statutory construction instruct courts to assume that the choice was deliberate and indicative of a different intent. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014). When we follow that principle here, context, as well as text, compels the conclusion that Congress clearly intended for § 1227(a)(2)(E)(ii) removability to be determined by the alien's conduct and the particular protection order it was found to have violated, rather than a categorical, or modified categorical, assessment of some crime of conviction.

Nor is a different conclusion warranted because § 1227(a)(2)(E)(ii) requires a finding not only that an alien's conduct violated a protection order, but also that the violation pertained to a particular provision of the order "involv[ing] protection against credible threats of violence, repeated harassment, or bodily injury to" a specified protected person. Alvarez attempts to cast the last requirement as a modified categorical inquiry by treating a protection order as the equivalent of a divisible statute, with the quoted language serving as a requisite element for purposes of removability. But the text of § 1227(a)(2)(E)(ii) provides no basis for this argument. A protection order is not akin to a statute, which identifies crimes of general applicability through elements that categorically identify the minimum conduct required to convict some hypothetical person without regard to the specific conduct of a convicted defendant. *See Nijhawan v. Holder*, 557 U.S. 29, 34–36 (2009) (explaining rationale for categorical approach). Rather, a protection order is statutorily defined as an "injunction," *i.e.*, a court order that applies to a particular person "for the purpose of preventing" that person from engaging in "violent or threatening acts of domestic violence,"

27

usually as against one or more named persons. 8 U.S.C. § 1227(a)(2)(E)(ii). In short, a protection order has no general application; it is necessarily case-specific.

We assume that Congress understood the difference between generally applicable criminal statutes and case-specific protection orders when it made violations of the latter, not convictions under the former, the ground for removal under § 1227(a)(2)(E)(ii). *See generally United States v. Scott*, 990 F.3d at 108–10 (presuming Congress's understanding of words used in statutes). Thus, because the statutory text signals Congress's clear intent for removability under § 1227(a)(2)(E)(ii) to be determined by reference to the totality of the circumstances, Alvarez's argument for the application of a modified categorical standard lacks an arguable basis in law.

## B. Relevant Precedent

Relevant precedents reinforce the conclusion we draw from text.

### 1. Supreme Court

While courts have long applied a categorical approach to determining removability under those subparts of § 1227(a)(2) that depend on *conviction* for a specified crime, *see Mellouli v. Lynch*, 575 U.S. 798, 804 (2015); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185–86 (2007), the Supreme Court has cautioned that, even in that context, the approach is not absolute, *see Nijhawan v. Holder*, 557 U.S. at 36. At issue in *Nijhawan* was § 1227(a)(2)(A)(iii), which identifies as deportable an alien "convicted of an aggravated felony." The INA defines "aggravated felony" to include, among other crimes, "an

28

offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The question before the Supreme Court was whether this statutory definition requires the specified loss amount to operate categorically, *i.e.*, as a necessary element of any fraud or deceit crime supporting removal, or whether the requisite loss could be satisfied on a case-specific inquiry.[23]

A unanimous Court concluded that the loss amount required for an aggravated felony is case-specific, not categorical. *See Nijhawan v. Holder*, 557 U.S. at 40. Looking to statutory text, the Court observed that the language Congress used to identify those fraud and deceit crimes constituting aggravated felonies "almost certainly does not refer to generic crimes but refers to specific circumstances" and "contain[s] qualifying language that certainly seems to call for circumstance-specific application." *Id.* at 37, 38. The Court reasoned that Congress's use of the phrase "in which" to modify "offense" signaled its intent to "refer to the conduct involved '*in*' the commission of the offense of conviction, rather than to the elements *of* the offense." *Id.* at 39 (emphasis in original). To conclude otherwise, the Court explained, "would leave subparagraph (M)(i)" of the statutory definition of aggravated felony "with little, if any, meaningful application." *Id.*

---

[23] Nijhawan was convicted after trial of conspiring to commit mail fraud, wire fraud, bank fraud, and money laundering, in violation of 18 U.S.C. §§ 371, 1341, 1343, 1344, & 1956(h), statutes that do not require proof of a loss amount. *See Nijhawan v. Holder*, 557 U.S. at 32. While the jury made no loss finding, at sentencing, Nijhawan stipulated to having caused his victims a loss of at least $100 million. *See id.*

The Supreme Court's reasoning in *Nijhawan* applies with even more force to removability determinations under § 1227(a)(2)(E)(ii), which, unlike § 1227(a)(2)(A)(iii), does not require any "conviction," the usual trigger for a categorical, or modified categorical, standard. *See, e.g., Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (stating, in immigration context, that "conviction is the relevant statutory hook" for applying categorical standard (internal alterations and quotation marks omitted)). Moreover, in § 1227(a)(2)(E)(ii), Congress does not simply use a preposition to "refer to the conduct involved 'in' the commission of" a generally applicable crime. *Nijhawan v. Holder*, 557 U.S. at 39. Rather, Congress explicitly states that the "conduct" "engaged in" by an alien in violating a protection order—and not the mere fact of a violation—is determinative of removability. 8 U.S.C. § 1227(a)(2)(E)(ii).

Thus, both *Nijhawan*'s reasoning and statutory text leave Alvarez with no arguable basis in law for applying a categorical or modified categorical approach to § 1227(a)(2)(E)(ii).

## 2.    Second Circuit

Nor can Alvarez locate such a basis in our own precedent. Even before *Nijhawan*, this court recognized that certain removal provisions of § 1227(a)(ii) might "invite inquiry into the facts underlying the [prior] conviction." *James v. Mukasey*, 522 F.3d 250, 255 & n.5 (2d Cir. 2008) (alterations and citation omitted). Indeed, only a few months before the Supreme Court decided *Nijhawan*, in a case challenging a determination of removability under § 1227(a)(2)(E)(ii), we cited approvingly to *James* in stating that "[n]ot every removability provision requires application of the 'categorical approach' or the

30

'modified categorical approach.'" *Hoodho v. Holder*, 558 F.3d 184, 189 n.2 (2d Cir. 2009).

To be sure, in *Hoodho*, this court found it unnecessary conclusively to reject petitioner's argument for application of a categorical standard to § 1227(a)(2)(E)(ii). *See id.* at 190 (holding petitioner bound, in any event, by concession of removability in immigration proceedings). But when the question arose again in *Garcia v. Wilkinson*, the court thought it sufficiently clear from the text of § 1227(a)(2)(E)(ii) and from the reasoning in *Nijhawan* that a circumstance-specific, rather than categorical, standard applied to removal determinations under that subpart that we reached the conclusion summarily. *See* 847 F. App'x 50, 53 (2d Cir. 2021) (observing that statutory text "requires that the agency or reviewing court assess the 'conduct' of the individual rather than the type of conviction" in determining § 1227(a)(2)(E)(ii) removability (citing, *inter alia*, *Nijhawan v. Holder*, 557 U.S. at 38–39)).

Thus, in this published opinion, we simply reiterate what we recognized summarily in *Garcia:* removability under § 1227(a)(2)(E)(ii) is not subject to a categorical, or modified categorical, standard. *Cf. Furman v. United States*, 720 F.2d 263, 265 (2d Cir. 1983) ("The fact that a disposition is by informal summary order rather than by formal published opinion in no way indicates that less than adequate consideration has been given to the claims raised in the appeal."). Rather, it depends on a case-specific determination of circumstances, both as to the existence and terms of a particular protection order entered against an alien and the conduct engaged in by the alien in violating that order.

31

### 3. Other Courts of Appeals

Our conclusion also comports with the rulings of other courts of appeals. Notably, in *Garcia-Hernandez v. Boente*, the Seventh Circuit held that, because the text of § 1227(a)(2)(E)(ii) "does not depend on a criminal conviction but on what a court 'determines' about the alien's conduct[,] . . . neither the categorical approach nor the modified categorical approach" applies in determining removability under that statutory subpart. 847 F.3d 869, 872 (7th Cir. 2017). Rather, if "the alien has engaged in conduct that violates a portion of the order that 'involves protection against credible threats of violence, repeated harassment, or bodily injury'"—a circumstance-specific inquiry— "that is enough for purposes of (E)(ii)." *Id.* (quoting 8 U.S.C. § 1227(a)(2)(E)(ii)).

Reiterating this conclusion in *Rodriguez v. Sessions*, the Seventh Circuit stated that "[w]hen a statute does not make itself contingent on a conviction, the categorical approach is unnecessary, and courts should respond to what the statute *does* depend on," which, for purposes of determining removability under § 1227(a)(2)(E)(ii), is simply "what a court determines about the alien's conduct" in his particular case. 876 F.3d 280, 284 (7th Cir. 2017) (emphasis in original) (internal quotation marks omitted).

The Third Circuit recently cited approvingly to *Rodriguez v. Sessions* in stating that removability under § 1227(a)(2)(E)(ii) ultimately turns on a finding as to an alien's "conduct." *Sunuwar v. Att'y Gen.*, 989 F.3d 239, 247–48 (3d Cir. 2021). The conclusion effectively rejects a categorical, or modified categorical, approach to removability under § 1227(a)(2)(E)(ii). *See id.* at 248 (approving

agency's reference to "probative and reliable evidence regarding what the Pennsylvania court has determined about Sunuwar's violation" of pertinent protection order (alterations and internal quotation marks omitted)).  In fact, the Third Circuit had already summarily approved the agency's use of a "'circumstance-specific' approach, rather than a categorical/modified categorical approach" to determining § 1227(a)(2)(E)(ii) removability.  *Reid v. Att'y Gen.*, 651 F. App'x 134, 135 (3d Cir. 2016).  There, the court had cited *Nijhawan* as rejecting any "evidentiary limitations on sources to which the court can look under the circumstance-specific approach."  *Id.* at 135–36.

Similarly, the Ninth Circuit, in rejecting a petition challenging an order of removal under § 1227(a)(2)(E)(ii), upheld the BIA's view that "the categorical approach does not apply" to determining removability under that section or affording discretionary relief therefrom.  *Diaz-Quirazco v. Barr*, 931 F.3d 830, 835 (9th Cir. 2019).[24]

---

[24] A decade earlier, Judge Wu had urged this same conclusion from the plain language of § 1227(a)(2)(E)(ii) and the reasoning in *Nijhawan*.  *See Szalai v. Holder*, 572 F.3d 975, 982–87 (9th Cir. 2009) (Wu, J., concurring).  When the Ninth Circuit subsequently adopted the conclusion in *Diaz-Quirazco*, the court employed *Chevron* deference, identifying some ambiguity as to Congress's intent to bar aliens removable under § 1227(a)(2)(E)(ii) from cancellation of removal under § 1229b(b)(1)(C), given the former statutory provision's focus on "conduct" without regard to conviction, while the latter's prohibition of relief references only conviction.  *See Diaz-Quirazco v. Barr*, 931 F.3d at 835, 840–42 (deferring to BIA's construction of both statutory provisions as set forth in *Matter of Obshatko*, 27 I. & N. Dec. 173, and *Matter of Medina-Jimenez*, 27 I. & N. Dec. 399 (B.I.A. 2018)).  To the extent the Ninth Circuit identified ambiguity, we think that conclusion warranted, at most, with respect to the scope of the § 1229b(b)(1)(C) bar, a matter we need not here consider given that no party challenges the agency's present recognition of Alvarez's eligibility for cancellation of removal.  For the reasons already stated *supra* at 23–28, we identify no ambiguity with respect to Congress's intent for

The court explained that "[w]hile a conviction may underlie the charge" of removability under § 1227(a)(2)(E)(ii), "whether the alien has been 'convicted' is *not* the critical question." *Id.* at 841 (emphasis added); *see also id.* at 840 (citing authority recognizing that, in statutory text, "word 'conviction'" generally "triggers the categorical approach"). Rather, § 1227(a)(2)(E)(ii) "focuses on what the state court found about the alien's conduct." *Id.* at 841.

The Tenth Circuit's earlier decision in *Cespedes v. Lynch*, 805 F.3d 1274 (10th Cir. 2015), is not to the contrary. The petitioner in that case had been *convicted* of violating a no-contact provision of a protection order. In upholding his § 1227(a)(2)(E)(ii) removal by reference only to the conviction and not to the petitioner's conduct, the court rejected his modified-categorical argument as irrelevant. *See id.* at 1276 n.5.

In sum, there is no arguable basis in text or precedent for Alvarez's insistence on a modified categorical standard for determining § 1227(a)(2)(E)(ii) removability.

### C. The BIA Construction of § 1227(a)(2)(E)(ii)

While the absence of statutory ambiguity makes it unnecessary for us to defer to the BIA's construction of § 1227(a)(2)(E)(ii) at the second step of *Chevron* analysis, we nevertheless note that the BIA's

§ 1227(a)(2)(E)(ii) removability to be determined on a circumstance-specific rather than categorical basis and, thus, no need for *Chevron* deference to the BIA on this point. Nevertheless, as we note in the next section of this opinion, the BIA's construction of § 1227(a)(2)(E)(ii) now aligns with our own insofar as it rejects a categorical standard in favor of what is, in practice, if not in name, a circumstance-specific one. *See infra* at 34–36.

view, as expressed in its 2017 precedential opinion *Matter of Obshatko*, 27 I. & N. Dec. 173, is largely consistent with our own, as well as the court precedents just discussed.

Before *Obshatko*, the BIA, in considering the removability of an alien *convicted* of a crime as a result of a protection order violation, had "presumed" that a categorical standard applied to § 1227(a)(2)(E)(ii). *Id.* at 177 (observing that in *Matter of Strydom*, 25 I. & N. Dec. 507 (B.I.A. 2011), BIA had determined that alien's conviction rendered him categorically removable under § 1227(a)(2)(E)(ii)). But when compelled "squarely" to address the interpretative approach applicable to § 1227(a)(2)(E)(ii) in *Obshatko*, the agency concluded that "[b]ecause Congress did not require a 'conviction'" in that statutory subpart, "it did not intend an alien's removability under that section to be analyzed under either the categorical or modified categorical approach," even when supported by a conviction. *Id.* at 175, 177. In support of that conclusion, the BIA relied on some of the same authority earlier cited in this opinion. *See id.* at 175–76 (citing, *inter alia*, *Mellouli v. Lynch*, 575 U.S. at 806; *Garcia-Hernandez v. Boente*, 847 F.3d at 872; *Hoodho v. Holder*, 558 F.3d at 189 n.2).[25]

---

[25] To the extent the BIA, in *Matter of Obshatko*, seems also to have rejected a circumstance-specific approach to § 1227(a)(2)(E)(ii), *see* I. & N. Dec. at 176, we owe no deference to this interpretation given the clarity with which we think Congress has signaled its intent for such a standard to apply. In any event, we think the BIA's reasoning on this point more confusing than persuasive. To explain, the BIA cited *Nijhawan v. Holder*, 557 U.S. at 40 (rejecting categorical, and approving circumstance-specific, standard for determining monetary threshold required to recognize fraud conviction as "aggravated felony" supporting § 1227(a)(2)(A)(iii)

In sum, neither text, precedents, nor even current agency rulings provide an arguable basis in law for Alvarez to challenge his removal based on the agency's failure to apply a modified categorical standard of review.

### III.    Alvarez's Removability Under § 1227(a)(2)(E)(ii)

Having thus concluded that Alvarez lacks an arguable basis in law or fact to fault immigration authorities for failing to apply a modified categorical standard in determining his removability under

---

removal), in concluding that a circumstance-specific standard applies "only when a *portion* of a criminal ground of removability is not subject to the categorical approach." *Matter of Obshatko*, I. & N. Dec. at 176 (emphasis in original). Even assuming the soundness of that conclusion with respect to removal grounds expressly requiring a conviction, the BIA nowhere explained how *Nijhawan* supports the agency's further conclusion that where—as in § 1227(a)(2)(E)(ii)—removal requires no conviction such that "the *entire* ground" for removal "is not subject to a categorical analysis," it follows that "a circumstance-specific approach is inapposite." *Id.* (emphasis in original). The more logical conclusion would be that where the entire ground for removal is not subject to categorical analysis, a circumstance-specific standard applies. Instead, the BIA stated that immigration authorities determining § 1227(a)(2)(E)(ii) removability are somehow "limit[ed]" by the statutory text to identifying "what a court has 'determined' about the alien's violation of a protection order." *Id.* But in the very next sentence, the BIA effectively acknowledged that this is no limitation at all because that determination is itself circumstance-specific: "[I]n practical terms, the result in this case may be the same under the circumstance-specific approach, since both the specific circumstances surrounding an alien's violation and what a court has 'determined' regarding that violation may be established through *any reliable evidence.*" *Id.* (emphasis added). In sum, the BIA effectively recognized that an immigration court's § 1227(a)(2)(E)(ii) inquiry, even when focused on a state court's violation finding, is entirely circumstance-specific and not categorical. Thus, BIA construction of § 1227(a)(2)(E)(ii) provides no arguable basis in law for Alvarez's modified-categorical challenge to removal.

§ 1227(a)(2)(E)(ii), we conclude that Alvarez advances no other cognizable challenge to removal.

He does not—and cannot—dispute that when, in 2002, he was charged with, *inter alia*, assaulting Ms. Escolastico, he was then enjoined from engaging in such conduct by a 2001 New York court protection order "issued for the purpose of preventing violent or threatening acts of domestic violence," as specified in § 1227(a)(2)(E)(ii). The New York statute pursuant to which the court entered the 2001 protection order authorizes the issuance of such orders in the event of a criminal action "involving a complaint charging any crime or violation between spouses, former spouses, . . . or between members of the same family or household." N.Y. Crim. Proc. § 530.12. The 2001 order was entered shortly after Alvarez pleaded guilty to a charge of first-degree criminal contempt for assaulting Ms. Escolastico in violation of a 1999 protection order. Given the underlying facts, detailed *supra* at 4–7, there can be no question that the 2001 order was entered "for the purpose of preventing violent or threatening acts of domestic violence." 8 U.S.C. § 1227(a)(2)(E)(ii).

Nor is there an arguable basis in law or fact for Alvarez's contention that the state court failed to find that he "engaged in conduct that violate[d] the portion of [the 2001] protection order that involve[d] protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued." *Id.* To explain, a provision of the 2001 protection order clearly involves protection against physical harm or harassment, in that it required Alvarez to "[r]efrain from assault,

37

stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats, or any criminal offense against . . . Angela Escolastico." Admin. R. 134. New York State court records show that Alvarez pleaded guilty to first-degree criminal contempt in violation of Count Two of the 2002 indictment.[26] *See id.* at 1448. That count charged that Alvarez, while subject to a court protection order, "struck, shoved, and otherwise subjected Angela Escolastico to physical contact" in violation of N.Y. Penal L. § 215.51(b)(v). *Id.* at 1451. Alvarez's conviction on Count Two thus admits only one finding: that he engaged in physically assaultive conduct toward Ms. Escolastico, such that the New York court necessarily determined that he engaged in conduct that violated the above-quoted provision of the 2001 order involving the protections specified in § 1227(a)(2)(E)(ii).

There appears to have been some confusion in Alvarez's immigration proceedings as to whether his first-degree contempt conviction was under N.Y. Penal L. § 215.51(b)(ii) or (b)(v) (quoted *supra* at 5 n.3). Rather than address the ambiguity, DHS argued that it was immaterial because *every* provision of the 2001 protection order, including those requiring Alvarez to stay away from Ms. Escolastico and prohibiting him from contacting her, involved protection against credible threats of violence, repeated harassment, or bodily injury, as

---

[26] As we explain *supra* at 25–28, the focus of inquiry under § 1227(a)(2)(E)(ii) is on an alien's "conduct," not on any "conviction" associated with that conduct. Nevertheless, because "conduct" is circumstance-specific, any relevant evidence, including a record of conviction, may be considered in determining what an alien's conduct entailed. In this, we agree with the BIA. *See Matter of Obshatko*, 27 I. & N. Dec. at 176 (stating that "any reliable evidence" may be considered in making § 1227(a)(2)(E)(ii) findings).

specified in § 1227(a)(2)(E)(ii). The BIA accepted this argument consistent with its own precedent. *See Matter of Strydom*, 25 I & N Dec. at 509–11 (holding that no-contact provision in protection order ensures "victims will not be victimized again"). While generally "we cannot, on appeal, substitute an argument . . . for those that the BIA actually gave to support the conclusion [petitioner] disputes on appeal," *Singh v. U.S. Dep't of Just.*, 461 F.3d 290, 294 n.3 (2d Cir. 2006), a petitioner has no arguable basis in law for relief when the record clearly indicates that immigration authorities would have to reach the same conclusion on remand, *see Cao He Lin v. U.S. Dep't of Just.*, 428 F.3d 391, 401–02 (2d Cir. 2005) (holding remand unnecessary "where there is no realistic possibility that, absent the errors, the IJ or BIA would have reached a different conclusion"). That is this case, given that state records clearly demonstrate that Alvarez was convicted for contempt under N.Y. Penal L. § 215.51(b)(v).

Accordingly, we need not here decide whether violation of a "stay-away" or "no-contact" provision of a protection order involves the sort of protection specified in § 1227(a)(2)(E)(ii), as the BIA has held. Several courts of appeals have reached the same conclusion, either independently or deferentially under *Chevron*. *See Sunuwar v. Att'y Gen.*, 989 F.3d at 248 [3d Cir.]; *Garcia-Hernandez v. Boente*, 847 F.3d at 873 [7th Cir.]; *Szalai v. Holder*, 572 F.3d 975, 980–82 (9th Cir. 2009); *Alanis-Alvarez v. Holder*, 558 F.3d 833, 839 (9th Cir. 2009). We did not ourselves decide the question when it arose in *Hoodho v. Holder*, relying instead on the criminal complaint to which petitioner there had pleaded guilty to conclude that he violated a protection order provision protecting against "repeated harassment" as specified in § 1227(a)(2)(E)(ii). 558 F.3d at 190. So here, we do not

decide the question because state court records make clear that Alvarez's contempt conviction was for physically assaultive conduct in violation of N.Y. Penal L. § 215.51(b)(v), clearly violating the provision of the 2001 protection order in the manner specified by § 1227(a)(2)(E)(ii).

Finally, we also need not here decide whether § 1227(a)(2)(E)(ii)'s "provision" requirement must be found by the court—here, the state court—identifying a protection order violation (as Alvarez sometimes urges),[27] or whether it can be found by the immigration authorities deciding removability (as at least one of our sister circuits has ruled)[28] because, even if we were to decide that question in Alvarez's favor, the record of conviction compels the conclusion that the state court effectively made the finding required under § 1227(a)(2)(E)(ii).

---

[27] Elsewhere in his counseled reply, Alvarez argues that "[t]he removal statute . . . requires the Immigration Court to determine which section of an order of protection was violated." Pet. Reply at 7.

[28] In *Cespedes v. Lynch*, the Tenth Circuit ruled that a state court, in finding an alien's conduct to have violated a protection order, need not have further found that the alien breached a provision of the sort identified in § 1227(a)(2)(E)(ii). *See* 805 F.3d at 1278. It reasoned that "Congress surely did not expect state courts, in anticipation of a possible removal proceeding, to make a finding about the purpose of each clause of a protection order." *Id.* Thus, it held that a state court need only "find that conduct violated the terms of the order," with federal immigration authorities responsible for deciding which provision was violated and "whether the violated term involves protection against credible threats of violence." *Id.* (internal quotation marks omitted). The reasoning is persuasive, but we need not ourselves conclusively adopt it because the record of conviction denies Alvarez any arguable basis in fact to claim that the state court did not make the provision finding required by § 1227(a)(2)(E)(ii).

40

In sum, because there is no arguable basis in law or fact for Alvarez to challenge his removability under § 1227(a)(2)(E)(ii), we are obliged to dismiss that part of his petition.

## IV. Cancellation of Removal

We must also dismiss the remainder of Alvarez's petition challenging the agency's discretionary denial of his application for cancellation of removal. To the extent Alvarez, in moving *pro se* for a stay, asserts that "[t]he IJ's exercise of discretion [in denying cancellation] was improper," Mot. for Stay at 1, that conclusory assertion is insufficient to allow us to exercise jurisdiction. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 329 (2d Cir. 2006) (stating that where petition "merely quarrels over the correctness of the factual findings or justification for [an IJ's] discretionary choices," court lacks jurisdiction to review). Insofar as Alvarez's counsel, in his reply brief, states that his challenge to the agency's denial of relief "rests on whether or not respondent should be considered removable as charged" under § 1227(a)(2)(E)(ii), Pet. Reply at 5, the challenge to the decision to deny cancellation of removal must be dismissed for the same reasons as the removability challenge on which it rests.

To the extent Alvarez seeks to avoid this result by invoking the constitutional protection of due process, *see* Pet. at 8 (challenging IJ's adverse credibility finding as due process violation), a "talismanic invocation of the language of 'due process'" is insufficient to afford us jurisdiction to review what is, at its core, a factual dispute. *Saloum v. U.S. Citizenship & Immigr. Servs.*, 437 F.3d 238, 243 (2d Cir. 2006). Similarly, Alvarez's claim that the factors favorable to his application for cancellation were not "fully" considered by the IJ and BIA, Pet. at

41

3, is really a challenge to how the IJ balanced those factors against unfavorable ones, an "unreviewable argument." *Argueta v. Holder*, 617 F.3d 109, 113 (2d Cir. 2010).

Nor is there an arguable basis in law or fact for Alvarez to fault the IJ's consideration of his 2015 robbery conviction—reversed on double jeopardy grounds—as a negative factor weighing against cancellation. In rejecting Alvarez's claim of error, the BIA ruled that an IJ "may consider the underlying factors of an arrest, even if the arrest ultimately does not lead to a conviction." Admin. R. 5 (citing *Matter of Thomas*, 21 I. & N. Dec. 20, 23 (B.I.A. 1995)). That comports with our own precedent, holding that immigration authorities may consider misconduct that does not result in a conviction when evaluating whether an alien merits discretionary relief. *See Wallace v. Gonzales*, 463 F.3d 135, 139 (2d Cir. 2006) (identifying "no reason to prevent an IJ or the BIA from considering an applicant's anti-social conduct—whether leading to a conviction . . . or no legal judgment whatsoever—as an adverse factor in evaluating an application for discretionary relief"); *accord Marquez v. Garland*, 13 F.4th 108, 115 n.4 (2d Cir. 2021) (stating that "uncorroborated arrest reports are admissible in the cancellation-of-removal discretionary analysis" and citing approvingly to *Matter of Thomas*). Thus, this claim of error lacks any basis in law.

In sum, because Alvarez's challenge to the denial of cancellation of removal fails to raise claims over which we have jurisdiction or that have an arguable basis in law or fact, we must dismiss this part of his petition.

42

**CONCLUSION**

To summarize, we here reiterate what we have previously recognized summarily: removability under 8 U.S.C. § 1227(a)(2)(E)(ii) is determined not by a categorical or modified categorical analysis of the minimum conduct sufficient for a criminal conviction or even for violation of a protection order. Rather, it is determined by a circumstance-specific inquiry as to whether a court found a particular alien's conduct to violate a protection order then applicable to him, and whether that violation pertained to a provision of the order involving protection against credible threats of violence, repeated harassment, or bodily injury to the person for whom the protection order was issued. Because petitioner's arguments to the contrary lack any arguable basis in law or fact, and because his other challenges to removability and to the denial of cancellation of removal are similarly frivolous, we are hereby obliged to dismiss his petition under 28 U.S.C. § 1915(e)(2)(B)(i), and to deny all motions, both by the petitioner and the respondent, as moot.

Accordingly, the petition for review is **DISMISSED** as frivolous, and petitioner's motions to proceed *in forma pauperis*, for appointment of counsel, and for a stay of removal, as well as respondent's motion for expedited review, are all **DENIED** as moot.