FILED
United States Court of Appeals
Tenth Circuit

November 19, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JOSE RAMON CESPEDES,

      Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

      Respondent.

No. 14-9604

## PETITION FOR REVIEW OF AN ORDER
## OF THE BOARD OF IMMIGRATION APPEALS

Lance C. Starr, Lance C. Starr, LLC, American Fork, Utah, for Petitioner.

Tim Ramnitz, Attorney, Office of Immigration Litigation, Civil Division, (Shelley R. Goad, Assistant Director, with him on the brief), U.S. Department of Justice, Washington, D.C., for Respondent

Before **HARTZ**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

**HARTZ**, Circuit Judge.

The Immigration and Nationality Act (INA) provides that a permanent resident is removable if he "violates the portion of a [domestic-violence] protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury." 8 U.S.C. § 1227(a)(2)(E)(ii). The issue before us is whether violation of an order prohibiting contact with a potential victim satisfies the statute. We hold that it does.

## I.    BACKGROUND

Petitioner Jose Ramon Cespedes, a native and citizen of Venezuela, entered the United States as a nonimmigrant tourist on January 11, 2011. His status was adjusted to conditional lawful permanent resident[1] on October 25, 2012. Later he was charged in Utah state court with domestic violence; and on April 24, 2013, that court issued a protective order against him under Utah's Cohabitant Abuse Procedures Act, Utah Code Ann. § 77-36-2.7 (2010). The statute states:

> Because of the likelihood of repeated violence directed at those who have been victims of domestic violence in the past, when any defendant is charged with a crime involving domestic violence, the court may, during any court hearing where the defendant is present, issue a pretrial protective order, pending trial[.]

---

[1] Cespedes, a minor at the time, entered the United States with his mother, who married a United States citizen. The INA provides that "an alien spouse . . . and an alien son or daughter . . . shall be considered, at the time of obtaining the status of an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis." 8 U.S.C. § 1186a(a)(1).

2

*Id.* § 77-36-2.7(3)(a). It then sets forth several specific prohibitions that can be included in such an order. The provision at issue here permits "prohibiting the defendant from . . . contacting . . . the victim, directly or indirectly." *Id.* § 77-36-2.7(3)(a)(ii).[2] The protective order tracked the language of the statute.[3]

---

[2] The complete language is:

> Because of the likelihood of repeated violence directed at those who have been victims of domestic violence in the past, when any defendant is charged with a crime involving domestic violence, the court may, during any court hearing where the defendant is present, issue a pretrial protective order, pending trial:
>    (i) enjoining the defendant from threatening to commit or committing acts of domestic violence or abuse against the victim and any designated family or household member;
>    (ii) *prohibiting the defendant from* harassing, telephoning, *contacting*, or otherwise communicating with *the victim, directly or indirectly*;
>    (iii) removing and excluding the defendant from the victim's residence and the premises of the residence;
>    (iv) ordering the defendant to stay away from the residence, school, place of employment of the victim, and the premises of any of these, or any specified place frequented by the victim and any designated family member; and
>    (v) ordering any other relief that the court considers necessary to protect and provide for the safety of the victim and any designated family or household member.

*Id.* § 77-36-2.7(3)(a) (emphasis added).

[3] The protective order provided:

> This matter having come before the court charging [Mr. Cespedes] with a crime of domestic violence, and because of the likelihood of repeated violence and having considered the request of the prosecutor and/or the protected party, pursuant to Utah Code Ann. §§ 77-35-2.7, 2.6,

Continued . . .

3

In November 2013, Mr. Cespedes pleaded guilty to attempted violation of a protective order under Utah Code Ann. § 76-5-108(1) (2013), which covers violations of several types of protective orders.[4] He has not disputed that he was convicted of violating a protective order entered under the Cohabitant Abuse Procedures Act or that

---

**IT IS HEREBY ORDERED,** that pending trial:
1. The defendant shall not threaten to commit or commit acts of domestic violence or abuse against the protected party and any designated family or household members;
2. *The defendant shall not contact*, telephone, harass, or otherwise communicate with *the protected party, directly or indirectly*;
3. The defendant is ordered to stay away from the residence, school, place of employment of the protected party, and the premises of any of these, or any specified place frequented by the protected party and any designated family members;
4. The defendant shall not use any threat of force or engage in any conduct that could cause bodily injury to the protected party.

R. at 229 (emphasis added).

[4] Section 76-5-108(1) provides:

> *Any person who is the respondent or defendant subject to a protective order*, child protective order, ex parte protective order, or ex parte child protective order issued *under* Title 78B, Chapter 7, Part 1, Cohabitant Abuse Act; Title 78A, Chapter 6, Juvenile Court Act; Title 77, Chapter 36, *Cohabitant Abuse Procedures Act*; or a foreign protection order enforceable under Title 78B, Chapter 7, Part 3, Uniform Interstate Enforcement of Domestic Violence Protection Orders Act, who intentionally or knowingly violates that order after having been properly served, is guilty of a class A misdemeanor, except as a greater penalty may be provided in Title 77, Chapter 36, Cohabitant Abuse Procedures Act.

(emphasis added).

4

the provision of the order that he was convicted of violating was the provision stating that "the defendant shall not contact . . . the protected party."[5]

A few months later, on May 14, 2014, the Department of Homeland Security brought a charge to remove Mr. Cespedes under 8 U.S.C. § 1227(a)(2)(E)(ii). The statute permits removal of an alien who "is enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury." § 1227(a)(2)(E)(ii).[6] In a hearing before an immigration

---

[5] Mr. Cespedes devotes much of his argument to the law regarding what is called the "modified categorical approach," which can be used to determine what offense an alien was convicted of. *See United States v. Trent*, 767 F.3d 1046, 1051–52 (10th Cir. 2014) (discussing modified categorical approach in criminal-sentencing context). But given his concession (even insistence) that he was convicted of violating a no-contact order, we are at a loss to understand the relevance of that discussion. Likewise, because we are considering only what he was convicted of, not his actual conduct (which may have been more serious), we fail to understand his apparent contention that our approach undermines the value of plea bargaining for defendants. *See Descamps v. United States*, 133 S. Ct. 2276, 2289 (2013) (noting that focus on elements of offense of conviction, rather than actual conduct, preserves benefit of defendant's plea bargain).

[6] Section 1227(a)(2)(E)(ii) states:

> Any alien who at any time after admission is *enjoined under a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury* to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence, including temporary or final orders issued by civil or criminal courts (other than support or child custody orders

Continued . . .

judge (IJ), Mr. Cespedes argued that his violation of the protection order did not come within the federal statute. The IJ rejected his argument and ordered him removed from the United States. He appealed to the Board of Immigration Appeals (BIA).

The BIA affirmed the IJ, relying on its holding in *Matter of Strydom*, 25 I. & N. Dec. 507, 510 (2011). An order protecting Strydom's wife from his abuse had included a no-contact provision. *See id.* at 507. He argued that his conviction may have been for merely attempting to call his wife by telephone. *See id.* at 507–08. A three-judge panel of the BIA rejected Strydom's argument that such a phone call would not fall within the federal statute. After noting that a protection order could issue under the state statute only "where there has been an abusive incident or there is an immediate danger of physical abuse, from which the court can offer protection," *id.* at 510, the BIA wrote:

> One important form of protection provided to the court by the [state] statute is the authority to issue temporary protection from abuse orders requiring the offender to stay away from the victims. Thus, the respondent's attempt to minimize his violation as one of mere "contact" is not persuasive because the primary purpose of a no-contact order is to protect the victims of domestic abuse by the offender. In other words, the offender is ordered not to have any contact so that the victims will not be victimized again. The no-contact provision in the respondent's temporary protection order was one that "involves protection against credible threats of violence, repeated harassment, or bodily injury" within the meaning of [§ 1227(a)(2)(E)(ii)].

*Id.*

---

> or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding.

(emphasis added).

*Strydom* found support in two Ninth Circuit cases. In *Alanis-Alvarado v. Holder*, 558 F.3d 833, 839 (9th Cir. 2009), the court held that an alien was removable for violating a protection order, even if his violation had amounted only to calling his domestic partner. As *Strydom* pointed out, the circuit "court emphasized that there was no requirement in [§1227(a)(2)(E)(ii)] that the respondent *actually had engaged* in violent, threatening, or harassing behavior, noting that it only requires a violation of the portion of a protection order that *involves protection against* credible threats of such conduct." *Strydom*, 25 I. & N. Dec. at 510–11 (internal quotation marks omitted). And in *Szalai v. Holder*, 572 F.3d 975 (9th Cir. 2009), the court, relying on its reasoning in *Alanis-Alvarado*, held that an alien was removable for violating a 100-yard stay-away protection order. The BIA acknowledged that not all violations of protection orders would come under the removability statute; for example, "'provisions requiring attendance at and payment for a counseling program or requiring the payment of costs for supervision during parenting time'" were not covered. *Strydom*, 25 I. & N. Dec. at 511 (quoting *Szalai*, 572 F.3d at 980). But no-contact provisions *are* covered.

## II.     DISCUSSION

Mr. Cespedes does not dispute that the reasoning of *Strydom* would apply here. His argument is that *Strydom* was not decided correctly. We hold that it was. Perhaps we would have reached a different decision in our independent judgment. But we defer under *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984), to decisions by a three-judge panel of the BIA interpreting the INA. *See Ibarra v.*

7

*Holder*, 736 F.3d 903, 910 (10th Cir. 2013). *Chevron* requires a two-step analysis. First, we apply the ordinary tools of statutory construction to "determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) (internal quotation marks omitted). But if the statute is ambiguous or silent, we proceed to the next step – analyzing "whether the agency's answer is based on a permissible construction of the statute." *Id.* (internal quotation marks omitted). An agency's construction is permissible unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. "A Court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*

There is room for debate on the meaning of "the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury." 8 U.S.C. § 1227(a)(2)(E)(ii). The phrase "involves protection" could be construed broadly or narrowly regarding how close the connection must be between the protection ordered and the threat of violence: must the order prohibit only imminent threats or is it enough if it nips in the bud the opportunity for violence? The BIA adopted a nips-in-the-bud interpretation. In our view, that interpretation was a reasonable construction of the statutory language.

There can be no question that the purpose of the protection order, as explained in the Utah statute authorizing it, is to prevent domestic violence. And by listing no-contact orders in the statute as a specific remedy to protect against "the likelihood of repeated violence," Utah Code Ann. §77-36-2.7(3)(a), the state legislature explicitly recognized the value of such orders in protecting victims. In our view, it is eminently reasonable to conclude that such an order "involves protection" against threats of violence and bodily injury. Once there is contact, there can be a significant risk of escalation to violence. Following *Strydom*, we hold that Mr. Cespedes's contact in violation of the protection order falls within § 1227(a)(2)(E)(ii).

Finally, Mr. Cespedes appears to argue that the state court, rather than the BIA, was required to make the determination that the no-contact provision of the protection order satisfied the requirements of § 1227(a)(2)(E)(ii). As purely a matter of English, the argument makes some sense. The statute makes deportable an alien who has been enjoined by a protection order and "*whom the court determines* has engaged in conduct that violates the portion of a protection order that *involves protection against credible threats of violence*." 8 U.S.C. § 1227(a)(2)(E)(ii) (emphasis added). One could read this language as saying that the convicting court must not only determine that the alien has violated the protection order but also determine that the portion of the order that was violated "involves protection against credible threats of violence." *Id.*

But all language must be read in context. And Congress surely did not expect state courts, in anticipation of a possible removal proceeding, to make a finding about the

9

purpose of each clause of a protection order. All one would expect of the court is to find that conduct violated the terms of the order. *Cf. Moncrieffe v. Holder*, 133 S. Ct. 1678, 1692 (2013) ("there is no reason to believe that state courts will regularly or uniformly admit evidence going to facts, such as remuneration, that are irrelevant to the offense charged"). We hold that such a finding is all that is required of the state court under § 1227. It is then the role of the IJ and the BIA to decide whether the violated term "involves protection against credible threats of violence." We reject Mr. Cespedes's creative argument. *Cf. United States v. Hayes*, 555 U.S. 415, 426–29 (2009) (noting that practical considerations support Court's construction of federal statute as barring possession of firearms by persons convicted of crime of domestic violence even if domestic relationship is not an element of the offense of conviction).

## III.  CONCLUSION

We DENY the petition for review.