In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1568

GABRIELA RODRIGUEZ,

*Petitioner,*

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals
No. A087-231-137

ARGUED OCTOBER 23, 2017 — DECIDED NOVEMBER 22, 2017

Before BAUER and HAMILTON, *Circuit Judges*, and DARROW, *District Judge*.[*]

DARROW, *District Judge*. This case presents a question closely connected with one this Court recently decided: when

---

[*] Of the Central District of Illinois, sitting by designation.

does a conviction for violating a protective order make a person ineligible for the cancellation of removal proceedings? See *Garcia-Hernandez v. Boente*, 847 F.3d 869 (7th Cir. 2017).

Gabriela Rodriguez was placed in removal proceedings—that is, she was scheduled to be deported—some 10 years after she entered this country from Mexico without inspection by United States authorities. She sought cancellation of her removal on the ground that it would cause her five dependent children, whom she raises alone, exceptional hardship. See 8 U.S.C. § 1229b(b)(1). One of her children is a cancer survivor who requires routine doctor visits to monitor his remission. The immigration judge who handled Rodriguez's case decided that she was statutorily ineligible for cancellation because she had been convicted of violating an order of protection in 2001. See 8 U.S.C. § 1227(a)(2)(E)(ii). The Board of Immigration Appeals affirmed this decision. Because Rodriguez is ineligible for cancellation, we agree, and deny the petition for review.

I.     *Factual and Procedural Background*

Rodriguez entered the United States without inspection on January 11, 1999. On February 2, 2000, her boyfriend, Manuel Ramirez, sought a restraining order against her in Dodge County, Wisconsin, claiming that he feared for his safety after episodes of domestic violence. The circuit court granted his request and issued a temporary restraining order pending a hearing. In a one-page form order, the court indicated that Ramirez was in imminent danger of physical harm, and ordered that Rodriguez avoid his residence and any personal contact with him.

Rodriguez testified before the immigration judge that be-cause she had nowhere else to go, and because she had two small children and all her belongings in the apartment she had been sharing with Ramirez, she did not leave. She was charged by criminal complaint on February 14, 2000, with knowingly violating a temporary restraining order. Wis. Stat. § 813.12(8)(a). The complainant, a police officer, indicated that Ramirez had met with him on February 5 and said that Rodri-guez refused to leave the apartment. Ramirez also told the of-ficer that he and Rodriguez had run into each other on the street and had an argument. Rodriguez pleaded no contest to the charge on April 6, 2001, and to a charge of misdemeanor bail jumping, Wis. Stat. § 946.49(1)(a), which is not at issue in this appeal.

The Department of Homeland Security charged Rodri-guez with removability and began removal proceedings against her on October 26, 2009, by filing a Notice to Appear in immigration court. 8 U.S.C. § 1182(a)(6)(A)(i). Rodriguez conceded the factual allegations contained in the Notice, but indicated that she would seek cancellation of her removal.

The Attorney General may cancel the removal of an un-lawfully admitted alien, or adjust her status to a permanent resident, if she has met all of several conditions: if she has been continuously present in the United States for 10 years, 8 U.S.C. § 1229b(b)(1)(A); "has been a person of good moral character" during that time, *id.* § 1229b(b)(1)(B); establishes that removal would cause an "exceptional and extremely un-usual hardship" to her child, *id.* § 1229b(b)(1)(D); and, rele-vant here, has not been convicted of certain enumerated of-fenses, *id.* § 1229b(b)(1)(C), including violation of a protection order, *id.* § 1227(a)(2)(E)(ii). Specifically, an alien is not eligible

for cancellation if, after she has been enjoined under a protection order, a "court determines [that she] has engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued … ." *Id.*

Although the government made more than one argument opposing cancellation before the immigration judge, the judge decided that Rodriguez's conviction for violating the temporary restraining order in Wisconsin settled the matter, and rested her decision on that basis alone. The immigration judge thought that because Wisconsin law requires a judge to consider the danger posed to a victim and any pattern of abusive conduct by the perpetrator, Wis. Stat. § 813.12(3)(a)(2)(aj), a misdemeanor conviction for having violated such an order is "categorically a removable offense," Imm. J. Order 3, Pet'r Br. App. B. Rodriguez appealed to the Board of Immigration Appeals (BIA), which conducted its own review and dismissed the appeal pursuant to a written decision. BIA Decision, Pet'r Br. App. A. The BIA decided that "the 'avoidance of residence' provision is a portion of the TRO related to protecting against future threats of violence, harassment, or bodily injury," *id.* at 2, and that since the conviction documents show Rodriguez violated that portion, she was ineligible for cancellation.

Rodriguez appealed the dismissal. We have jurisdiction to consider the appeal, as it presents a question of law. 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review that opinion, rather than the immigration judge's. *Sanchez v. Holder*, 757 F.3d 712, 717 (7th Cir. 2014). We review questions of law de novo. *Karroumeh v. Lynch*, 820 F.3d 890, 896 (7th Cir.

2016). Insofar as the BIA carefully and consistently interprets ambiguous immigration statutes, we apply the principles of deference enunciated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984). *Mata-Guerrero v. Holder*, 627 F.3d 256, 259 (7th Cir. 2010).

II.     *Discussion*

At moments, the immigration judge, the BIA, and Rodriguez all have seemed to rely on a determination about whether Wisconsin's restraining order statute categorically protects against threats of violence, harassment, or bodily injury. See Pet'r Br. 26 ("The Board failed to recognize that the overall purpose of the Wisconsin Statute does not necessarily protect solely against 'credible threats of violence, repeated harassment, or bodily injury.'"); BIA Decision 2 ("We agree with the Immigration Judge that the purpose of Wis. Stat. § 813.12(8)(a) … is to protect the victim from future threats of violence, harassment, or injury, irrespective of what behavior triggered the violation."). This is to say that the immigration judge, the BIA, and Rodriguez perform, at least in part, a categorical analysis of the statute, which, as we explained in *Garcia-Hernandez*, is neither necessary nor appropriate in cases that, like this one, concern 8 U.S.C. § 1227(a)(2)(E)(ii). We therefore think it useful to explain again the holding and reasoning of *Garcia-Hernandez*.

The Supreme Court has developed an interpretive method, commonly called the categorical approach, to determine when a person's prior criminal conviction can be counted against the person for purposes of statutory sentencing enhancements or determinations of removability. Under the categorical approach, courts determine whether a person has sustained a conviction for a particular kind of crime by

looking to whether the statute of conviction matches the "generic" version of the offense, or, rather, is broader, and could therefore be committed in a way that would not involve commission of the generic offense. See *Taylor v. United States*, 495 U.S. 575, 598 (1990). The categorical approach thus directs a court's attention to the statute of conviction, rather than to any other information the court has about what conduct a person may have actually engaged in to warrant (or not) a criminal conviction. See *Descamps v. United States*, 133 S. Ct. 2276, 2287–88 (2013). The Court has explained that this approach has three core virtues. First, it respects the text of statutes that are enhanced or triggered, on their own terms, by convictions under criminal statutes, rather than by participation in any particular prohibited conduct. *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). Second, it respects the requirement of the Sixth Amendment that only a jury may find facts that increase a maximum penalty. *Id.*; see *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). And third, it avoids unfairness to defendants by directing the focus of later courts only to those elements that the government was required to prove beyond a reasonable doubt in order to secure a conviction, and which therefore the defendant had incentive to contest at the earlier proceeding. *Mathis*, 136 S. Ct. at 2253.

As *Garcia-Hernandez* recognized, the main reason to apply the categorical approach springs from the first of the considerations the Court identified in *Mathis*—that the statutory text itself invokes a "conviction." See *Garcia-Hernandez*, 847 F.3d at 871 ("The categorical and modified categorical approaches are triggered by statutes that spell out consequences for criminal *convictions*.") (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)). When a statute does not make itself contingent on a conviction, the categorical approach is unnecessary, and

courts should respond to what the statute *does* depend on. While many of the conditions that may make an alien deportable, or ineligible for cancellation, are indeed prior convictions, 8 U.S.C. § 1227(a)(2)(E)(ii) does not invoke conviction. See 8 U.S.C. § 1227(a)(2)(A)(i) (aliens convicted of crimes involving moral turpitude are deportable); *id.* § 1227(a)(2)(A)(iii) (aggravated felonies); *id.* § 1227(a)(2)(B)(i) (drug crime convictions); *id.* § 1227(a)(2)(C) (firearm possession convictions). Rather, the text of (E)(ii) depends "on what a court 'determines' about the alien's conduct." *Garcia-Hernandez*, 847 F.3d at 872.

For an alien to be deportable or ineligible for cancellation under (E)(ii), there must (1) have been a protection order entered against the alien, (2) at least one part of that order must have involved protection against a credible threat of violence, and (3) a court must have determined that the alien engaged in conduct that violated that portion. As explained in *Garcia-Hernandez*, the statute asks whether a court has "determined" that an alien engaged in conduct that violated the restraining order's relevant part, not whether the statute under which the alien was convicted necessarily in all cases, or categorically, involved such behavior. 847 F.3d at 873. Indeed, a conviction is not required at all, just a court's determination (which may, of course, comprise a conviction). *Id.* In addition, the first and second elements identified above do not call for a categorical approach, either. Rather, they ask: was a protection order issued, and did part of it "involve" protection against a credible threat of violence? These are questions not about the law—although the laws that authorized a particular order may be

instructive—but about the purpose of a given order, and the purpose of its provisions.[1]

Breaking (E)(ii) into its elements brings Rodriguez's case more clearly into view.

First, the order that restrained Rodriguez was a protection order. A protection order is "any injunction issued for the purpose of preventing violent or threatening acts of domestic violence." 8 U.S.C. § 1227(a)(2)(E)(ii). The order's face in this case makes its purpose plain. It is titled "Notice of Hearing - Temporary Restraining Order (Domestic Abuse)." And it indicates expressly that the petitioner, Ramirez, is in imminent danger of physical harm. Coupled with its stay-away provisions, and the added requirement that the person restrained, Rodriguez, refrain from acts of domestic abuse, it is obvious that the order was issued, at least partly, for the purpose of preventing violent or threatening acts of domestic violence.

Second, the portion of the order requiring that Rodriguez avoid Ramirez's residence involves protection against credible threats of violence, repeated harassment, or bodily injury. The BIA determined that this provision related to protecting against future threats of violence, and relied on its previous

---

[1] Much confusion appears to have been caused by the distinct but overlapping requirements of the elements of (E)(ii). Plainly, an order entered for the purpose of preventing violent or threatening acts will likely have a portion involving protection against a credible threat of violence, and many violations of such orders will involve the violation of such portions. But not all protective orders issued under a given statute need be issued for purposes of such protection, or contain portions involving such protection. Thus, Rodriguez's argument, Pet'r Br. 25–28, that a person could manage to obtain a restraining order in Wisconsin absent any acts involving or threatening violence misses the point.

determination that the no-contact and stay-away provisions of restraining orders involve such protection. See *In re Strydom*, 25 I. & N. Dec. 507, 510–11 (B.I.A. 2011). As in *Garcia-Hernandez*, we agree with the BIA's interpretation of § 1227(a)(2)(E)(ii) on this score.

Third, and uncontestedly, a court determined that Rodriguez engaged in conduct that violated the avoidance-of-residence provision. The criminal complaint alleged that she remained on the premises of Ramirez's apartment, and she pleaded no contest to having knowingly violated the domestic abuse order that enjoined that behavior. See *Garcia-Hernandez*, 847 F.3d at 870, 872–73 (deciding that the state court determined petitioner violated the stay-away portion of a restraining order where he pleaded guilty to violating the order, and relying on the charging document to determine what behavior the court determined he engaged in). It does not matter that Rodriguez may not have acted violently by remaining on the premises; her violation of the avoidance-of-residence provision is enough.

Rodriguez is ineligible for cancellation of removal proceedings. The petition for review is therefore

DENIED.