# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2010
_____

Emmanuel Dwah Tiah

*Petitioner*

v.

Todd Blanche, Acting Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: December 17, 2025
Filed: June 8, 2026
_____

Before LOKEN, SMITH, and KOBES, Circuit Judges.
_____

SMITH, Circuit Judge.

Petitioner Emmanuel Tiah, a native and citizen of Liberia, petitions for review of a decision of the Board of Immigration Appeals (BIA). The BIA found him removable as charged pursuant to 8 U.S.C. § 1227(a)(2)(E)(ii). The BIA based its decision on Tiah's two North Dakota convictions for violating protection orders. It further found him ineligible for any form of relief or protection from removal. We must answer two questions to resolve Tiah's petition: First, whether copies of the

actual protection orders at issue were required to determine whether Tiah was removable under 8 U.S.C. § 1227(a)(2)(E)(ii). Second, even assuming copies were not required, whether the record was sufficient to establish by clear and convincing evidence that the protection orders satisfied the requirements of § 1227(a)(2)(E)(ii).

Section 1227(a)(2)(E)(ii) provides that the protection orders issued against Tiah must satisfy three requirements: (1) the protection orders were issued against Tiah for the purpose of preventing violent or threatening acts of domestic violence; (2) a portion of the protection orders "involve[d] protection against credible threats of violence, repeated harassment, or bodily injury"; and (3) a court determined that Tiah engaged in conduct that violated that portion of the protection order. *See* Docket for *Tiah v. Bondi*, 8th Cir. No. 24-2010 (May 20, 2025). We hold that copies of the actual protection orders were not required to determine Tiah's removability under § 1227(a)(2)(E)(ii). We also hold that the record sufficiently established the elements of § 1227(a)(2)(E)(ii) by clear and convincing evidence. Accordingly, we deny the petition for review.

I. *Background*

Tiah entered the United States as a lawful permanent resident on May 24, 2010, pursuant to the diversity visa lottery. In early 2021, Tiah ran afoul of relevant North Dakota law. A docket report from the State of North Dakota reveals that on January 18, 2021, Tiah was charged in Case No. 09-2021-CR-00245 with (1) "Disorderly conduct-Fighting behavior," in violation of N.D.C.C. § 12.1-31-01(1)(a), and (2) "Terrorizing-With a dangerous weapon-Adult Victim-DV," in violation of N.D.C.C. § 12.1-17-04(1). A.R. 492. Two days later, the first protection order was issued against Tiah; specifically, a "Pre Disposition" "Order Prohibiting Contact" was entered in the case. *Id.* at 493. The text of this protection order is not in the record.

Another docket report from the State of North Dakota shows that on January 25, 2021, Tiah was charged in a separate filing in Case No. 09-2021-cr-00389 with "Violation of an order prohibiting contact." *Id.* at 495 (citing N.D.C.C. § 12.1-31.2-

-2-

02(4) ("An individual who violates a court order issued under this section is guilty of a class A misdemeanor.").

The information filed the following day against Tiah stated:

> Count 1: VIOLATION OF AN ORDER PROHIBITING CONTACT in violation of Section 12.1-31.2-02(4), 12.1-32-01(5) (CST # C00895), N.D.C.C. in that on or about January 25, 2021: the defendant willfully violated a court order prohibiting contact issued under N.D.C.C. § 12.1-31.2-02[1] to-wit: that on or about the above-stated date, the defendant, EMMANUEL DWAH TIAH, came within 300 yards of Rose Tiah in violation of an order prohibiting contact.

*Id.* at 508 (bold and underline omitted). The related police report contained the facts underlying the charge. The report described an officer's investigation at Tiah's home in conjunction with a social worker. The description included the officer's basis for believing that Tiah was present in the home and law enforcement's subsequent discovery of Tiah hiding in the home. Based on the officer's observation of Tiah's presence within the 300 yards prohibited by the protection order, he sought the filing

---

[1]Section 12.1-31.2-02(1)(a), titled "Order prohibiting conduct," provides:

If an individual is charged with, arrested for, or subject to a sentence or order deferring imposition of sentence for a crime of violence or threat of violence, stalking, harassment, or a sex offense, the court authorizing the release of the individual, imposing a sentence, or issuing an order deferring imposition of sentence, shall consider and may issue an order prohibiting the individual from having contact with the victim. The order must contain the court's directives and must inform the individual that any violation of the order constitutes a criminal offense. The state's attorney shall provide a copy of the order to the victim. The court shall determine at the time of the individual's arraignment whether an order issued pursuant to this section will be extended. If the court issues an order pursuant to this section before the time the individual is charged, the order expires at the individual's arraignment or within seventy-two hours of issuance if charges against the individual are not filed.

of a charge for violating the court order against Tiah "for being in the home with the protected party, Rose Tiah, on the date of 1/25/2021, when he was located by officers." *Id.* at 509.

A third docket report from the State of North Dakota provides that on March 19, 2021, Tiah was charged in Case No. 09-2021-cr-01187 with "Violation of an order prohibiting contact," in violation of N.D.C.C. § 12.1-31.2-02(4). *Id.* at 499. The information, filed the same day, described the charged conduct:

> Count 1: VIOLATION OF AN ORDER PROHIBITING CONTACT in violation of Section 12.1-31.2-02(4), 12.1-32-01(5) (CST # C00895), N.D.C.C. in that on or about March 19, 2021: The defendant willfully violated a court order prohibiting contact issued under N.D.C.C. § 12.1-31.2-02 to-wit: that on or about the above-styled date, the defendant, EMMANUEL DWAH TIAH, willfully violated a court order prohibiting contact issued under N.D.C.C. § 12.1-31.2-02 regarding Rose Tiah issued in case 09-2021-CR-245.

*Id.* at 516 (bold and underline omitted). The police report recounted the officer's investigation into a call from Rose Tiah. She was concerned for her safety after Tiah had been released from custody. Rose showed the officer text messages that she had received from Tiah. The officer verified the active status of the protection order, which prohibited Tiah from "contact[ing] Rose electronically or in person." *Id.* at 517. Upon law enforcement locating Tiah, he "admitted to contacting Rose." *Id.*

The docket reports show that on May 21, 2021, Tiah pleaded guilty to the charge of "Violation of an order prohibiting contact" in Case No. 09-2021-cr-01187 and pleaded guilty to that same charge in Case No. 09-2021-00389. *Id.* at 442, 495. Criminal judgments were entered in both cases.

The docket report in Case No. 09-2021-CR-00245 reflects that Tiah pleaded guilty on June 4, 2021, to "Disorderly conduct-Fighting behavior." *Id.* at 492. The charge of "Terrorizing-With a dangerous weapon-Adult Victim-DV" was dismissed. *Id.* North Dakota's disorderly conduct statute provides that a person is guilty of a

Class B misdemeanor "if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual . . . [e]ngages in fighting, or in violent, tumultuous, or threatening behavior." N.D.C.C. § 12.1-31-01(1)(a). That same day, a "Post-Disposition" "Order Prohibiting Contact" was entered in the case. A.R. 493. This order prohibiting contact is not in the record. The post-disposition order was dismissed on January 6, 2022. *Id.*[2]

On May 23, 2023, the Department of Homeland Security (DHS) served Tiah with a Notice to Appear (NTA) charging him with being removable under 8 U.S.C. § 1227(a)(2)(E)(ii) as

> an alien who . . . after entry has been enjoined under a protection order and has been determined to have engaged in conduct in violation of that order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued.

*Id.* at 546; *see also id.* at 549.

Tiah appeared pro se at his initial removal hearing. At the hearing, Tiah admitted that his "wife" obtained a protection order against him on January 20, 2021, *id.* at 255, and that the state court "conclude[d] that [he] violated that protection order," *id.* at 258. Based on the record, the immigration judge (IJ) sustained the charge by DHS alleging that Tiah "has been enjoined under a protection order and has been . . . determined to have engaged in conduct in violation of that order that involves protection against credible threats of violence, repeated harassment or bodily injury to the person or persons for whom the protection order was issued." *Id.*

---

[2]As the government notes, "The record also contains evidence of Tiah's convictions pursuant to guilty pleas for violations of protection orders on other occasions, but those convictions were explicitly *not* considered by the Board in its analysis." Resp't's Suppl. Br. 6 n.1. As a result, we will not consider that evidence.

at 261–62. The IJ informed Tiah that he could apply for cancellation of removal and other relief, and Tiah subsequently submitted those applications.

At the final removal hearing, Tiah, again acting pro se, testified why his wife Rose obtained the "first restraining order in 2021." *Id.* at 299. According to Tiah, he and Rose had argued over her not returning his debit card. After Tiah took the debit card, Rose "wanted to fight" and ultimately called the police. *Id.* at 300. Tiah testified, "So when the police came . . . [Rose] told the police that, uh, I terrorize her, I wanted to fight her; in fact, I pick a knife for her." *Id.* Tiah went to jail as a result, and the state court entered the no-contact order. Tiah explained that when the no-contact order was entered, he had COVID-19 and "nowhere to go." *Id.* at 301. As a result, he returned home despite the no-contact order. This return generated the first violation.

Tiah also testified about the March 19, 2021 violation of the no-contact order. He admitted that there was a "no-contact order" in place against him. *Id.* at 305, 306. Rose "called the police" and reported that Tiah was contacting her. *Id.* at 307. The police questioned Tiah about whether he had "been in contact with Rose," and he responded, "no." *Id.* He explained that the police arrested him "because Rose told [the police] that [he] ha[d] texted her." *Id.*

In an oral decision, the IJ reiterated its prior determination sustaining the allegations against Tiah:

> Based on the facts that the record clearly indicates that an individual by the name of Rose Tiah acquired a No Contact Order against [Tiah] requiring him to remain a certain distance away from her and prohibiting him from having contact with her. [Tiah's] offenses took place in the domestic context of a husband and wife. Each of the convictions referenced in the Notice to Appear relative to the no-contact order violations, as well as the corresponding conviction records, indicate violations of the provisions of the no-contact order prohibiting [Tiah] from having contact with Ms. [Rose] Tiah. As such, the Court sustained the single charge by clear and convincing evidence.

*Id.* at 175–76 (strikethrough and underline omitted). The IJ also denied Tiah's cancellation of removal request. The IJ found his multiple violations of no-contact orders as well as drinking and driving offenses weighed against granting relief.

Tiah, now with counsel, appealed to the BIA. He raised five arguments: (1) the proceedings should have been terminated because the post-disposition no-contact order was lifted in 2022, before immigration authorities detained him in May 2023; (2) the government failed to meet its burden of proving that he was removable under 8 U.S.C. § 1227(a)(2)(E)(ii) due to the insufficiency of the record, which lacked the actual court orders that Tiah allegedly violated; (3) the IJ erred in denying cancellation of removal because it ignored positive factors; (4) Tiah's due process rights were violated when the IJ did not obtain a knowing and voluntary waiver of his right to counsel; and (5) the IJ should have inquired into his eligibility for a waiver under 8 U.S.C. § 1227(a)(7)(A).[3]

The BIA dismissed the appeal. It first concluded that Tiah's convictions for violating valid no-contact orders made case termination unwarranted. It noted that those orders "were effective for the duration of 2021, and [Tiah] was convicted of violating the effective orders on multiple occasions." *Id.* at 4. The BIA next determined that the no-contact convictions and correlating charging documents "clearly establishe[d] that the violations in question related to a protective order that was issued under a state legal provision that meets the requirements for removability under" § 1227(a)(2)(E)(ii). *Id.* The BIA explained:

> Specifically, for his May 21, 2021, convictions (09-2021-CR-00389 and 09-2021-CR-01187), [Tiah] pleaded guilty to "count 1" of the January 26, 2021, information, and "count 1" of the March 19, 2021, information, which both state that [Tiah] violated a no-contact order issued under section 12.1-31.2-02 of the North Dakota Century Code

_____

[3]Section 1227(a)(7)(A) authorizes waiving removability "in the case of an alien who has been battered or subjected to extreme cruelty and who is not and was not the primary perpetrator of violence in the relationship."

(Exh. 2 at 3, 11). Section 12.1-31.2-02 of the North Dakota Century Code specifically provides the grounds for issuing a no-contact order: "If an individual who is charged with or arrested for a crime of violence or threat of violence, stalking, harassment, or a sex offense is released from custody before arraignment or trial, the court authorizing the release of the individual shall consider and may issue an order prohibiting the individual from having contact with the victim." Preventing contact between the alleged perpetrator of a "crime of violence or threat of violence, stalking, harassment, or a sex offense" and the alleged victim is necessarily "an injunction issued for the purpose of preventing violent or threatening acts of domestic violence" under section 237(a)(2)(E)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(E)(ii).[4] Based on the foregoing, [Tiah's] May 21, 2021, convictions establish his removability under section 237(a)(2)(E)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(E)(ii).

*Id.* at 4–5.

The BIA also concluded that the IJ appropriately applied its discretion in denying Tiah cancellation of removal. As to Tiah's due process claim based on a lack of counsel, the BIA stated that the record belied Tiah's allegations. It also noted that Tiah failed to show prejudice by the lack of representation. Finally, it determined that Tiah was not prima facie eligible for a domestic violence waiver.

Tiah, acting pro se, petitioned for review of the of the BIA's order dismissing his appeal of the IJ's decision. In his pro se brief, Tiah renewed the arguments that he raised in his administrative appeal to the BIA. As to his removability, he asserted that the record evidence was insufficient to establish that he is removable because the actual January and June 2021 orders prohibiting contact are absent. The absence of those documents, he contends, means that there is no proof that his violations of the orders involved protection against credible threats of violence.

---

[4] "[Tiah] d[id] not dispute that these offenses took place while he was in a domestic relationship with the alleged victim." *Id.* at 5 n.3 (citation modified).

We appointed counsel to represent Tiah and directed the parties to file supplemental briefs addressing two issues: First, whether copies of the actual protection orders at issue were required to determine whether Tiah was removable under 8 U.S.C. § 1227(a)(2)(E)(ii). Second, even assuming copies were not required, whether the record was sufficient to establish by clear and convincing evidence that, as required by § 1227(a)(2)(E)(ii): (a) the 2021 protection orders were issued against Tiah for the purpose of preventing violent or threatening acts of domestic violence; (b) a portion of the protection orders "involve[d] protection against credible threats of violence, repeated harassment, or bodily injury"; and (c) a court determined that Tiah engaged in conduct that violated that portion of the protection order. *See* Docket for *Tiah v. Bondi*, 8th Cir. No. 24-2010 (May 20, 2025).

## II. *Discussion*

In his supplemental brief, Tiah challenges the BIA's conclusion that the language in N.D.C.C. § 12.1-31.2-02 was sufficient "to establish why the relevant protection order was issued and which portion of it was violated." Pet'r's Suppl. Br. 10. Tiah maintains that 8 U.S.C. § 1227(a)(2)(E)(ii)'s plain language required DHS to submit the actual protection order to prove why it was issued and whether he violated a portion of that order. Alternatively, he argues that even if DHS was not required to submit the actual protection order, the record evidence fails to show that the protection order implicated § 1227(a)(2)(E)(ii).[5]

---

[5]We conclude that the remaining issues that Tiah raised in his pro se brief are without merit. First, Tiah's assertion that removal proceedings should have been terminated because the no-contact order was eventually dismissed and there was no active order in place when he was "picked up" by authorities in May 2023 fails. Nothing in § 1227(a)(2)(E)(ii) mandates that a noncitizen be subject to a valid no-contact order at the time that he is brought into the custody of immigration authorities or is served with an NTA. Moreover, there is no dispute that he was convicted of violating a no-contact order on at least two occasions in 2021. Second, we lack jurisdiction to review the discretionary decision to deny cancellation of removal. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Mencia-Medina v. Garland*, 90 F.4th 1229, 1233–34 (8th Cir. 2024) (declining to review factors agency considered in determining noncitizen was "undeserving of relief as a matter of discretion"). Nor did Tiah establish a due process violation. The proceedings were not fundamentally

-9-

"Where, as here, the BIA issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency action. To the extent the BIA adopted the IJ's reasoning, as here, we review the IJ's decision too." *Hassan v. Rosen*, 985 F.3d 587, 589 (8th Cir. 2021) (citation modified). We apply de novo review to the BIA's legal conclusions and review for substantial evidence its factual findings. *Id.* "Substantial-evidence review is highly deferential, and we will unsettle factual findings only if any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citation modified).

Tiah's petition raises a statutory interpretation question not previously considered by this court; i.e., what must the government show to establish removability under § 1227(a)(2)(E)(ii). In interpreting § 1227(a)(2)(E)(ii), we "adopt the 'best reading of the statute': the one 'the court would have reached if no agency were involved.'" *3M Co. v. Comm'r of Internal Revenue*, 154 F.4th 574, 577 (8th Cir. 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (overruling *Chevron*-deference[6] framework)). "The text is our guide." *Id.* at 578.

Section 1227(a)(2)(E)(ii) provides:

> Any alien who at any time after admission is enjoined under a protection order issued by a court and whom the court determines has

---

unfair, and in any event, Tiah's assertion that the IJ did not obtain a knowing and voluntary response regarding a waiver of his right to an attorney fails to articulate a fundamental procedural error. *See Alva-Arellano v. Lynch*, 811 F.3d 1064, 1066 (8th Cir. 2016) (de novo review; to establish due process violation, noncitizen must demonstrate both fundamental error and prejudice); *Ramirez v. Sessions*, 902 F.3d 764, 772 (8th Cir. 2018) (to establish prejudice, noncitizen must show that "the outcome of the proceeding may well have been different had there not been any procedural irregularities" (citation modified)). We also note that Tiah filed a counseled administrative brief before the BIA. Finally, there is no credible evidence in the record to suggest that Tiah was prima facie eligible for a domestic violence waiver under § 1227(a)(7).

[6]*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

engaged in conduct that violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued is deportable. For purposes of this clause, the term "protection order" means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence,[7] including temporary or final orders issued by civil or criminal courts (other than support or child custody orders or provisions) whether obtained by filing an independent action or as a pendente lite order in another proceeding.

The plain language of § 1227(a)(2)(E)(ii) sets forth "three elements" that the government must prove "by clear and convincing evidence" "[f]or an alien to be deportable under this provision." *Michel v. Att'y Gen. United States*, No. 21-1649, 2022 WL 1421163, at \*2 (3d Cir. May 5, 2022) (unpublished) (quoting 8 U.S.C. § 1229a(c)(3)(A)). Those elements are as follows:

(1) there must have been a protection order entered by a court against the alien; (2) at least one portion of that order must have involved protection against a credible threat of violence, repeated harassment, or bodily injury; and (3) a court must have determined that the alien engaged in conduct that violated that portion.

*Id.* (citation modified).

_____

[7]"Domestic violence" is defined as

[v]iolence between members of a household or between romantic or sexual partners; the infliction of physical injury, or the creation of a reasonable fear of such an infliction, against a member of a household either by a parent or by a present or former member of the household. • The term refers esp. to violence between spouses or sexual partners (esp. cohabiting ones), but it can refer to other types of violence in a domestic setting, such as intentional child abuse committed by a member of the child's family.

*Violence*, Black's Law Dictionary (12th ed. 2024).

We read § 1227(a)(2)(E)(ii) to require that an alien's removability be determined by the specific factual circumstances of the case and not on a categorical basis. We agree with those circuits that have so held.[8] "[T]he categorical and modified categorical standards focus on the minimum conduct necessary to support conviction or a generally applicable crime (or part of a divisible crime), without regard to the actual conduct engaged in by a particular defendant." *Alvarez*, 33 F.4th at 640–41 (citation modified). These standards are inapplicable to § 1227(a)(2)(E)(ii), which "places singular focus on the particular protection order entered against an alien and that alien's own conduct in violating the order." *Id.* at 641. Determining an alien's removability under § 1227(a)(2)(E)(ii)

> necessarily calls for a circumstance-specific inquiry to determine both whether the alien engaged in conduct that violated the protection order under which he was enjoined and whether his conduct-based violation pertained to a provision of that order involving protection against credible threats of violence, repeated harassment, or bodily injury to a particular person.

*Id.*

---

[8]*See, e.g.*, *Alvarez v. Garland*, 33 F.4th 626, 640 (2d Cir. 2022) ("We construe the quoted text unambiguously to signal Congress's intent for removability under § 1227(a)(2)(E)(ii) to be determined on a circumstance-specific rather than a categorical—or modified categorical—basis."); *Sunuwar* 989 F.3d at 247–48 (stating that removability under § 1227(a)(2)(E)(ii) ultimately turns on a finding as to an alien's "conduct"); *Diaz-Quirazco v. Barr*, 931 F.3d 830, 835 (9th Cir. 2019) (upholding the BIA's view "that the categorical approach does not apply to determining" removability under § 1227(a)(2)(E)(ii)); *Rodriguez v. Sessions*, 876 F.3d 280, 284 (7th Cir. 2017) (stating that "[w]hen a statute does not make itself contingent on a conviction, the categorical approach is unnecessary, and courts should respond to what the statute does depend on," which, for purposes of determining removability under § 1227(a)(2)(E)(ii), is simply "what a court determines about the alien's conduct" in his particular case (citation modified)).

### A. *Necessity of Protection Order in the Administrative Record*

This case is admittedly an outlier. Most cases have had the actual protection order in the record when conducting a circumstance-specific inquiry under § 1227(a)(2)(E)(ii).[9] But is inclusion of the actual protection order in the record *required* to sustain a charge of removability under § 1227(a)(2)(E)(ii)? We conclude that the answer is no. The relevant content of the protection order may be established through other documentary evidence in the record.

The focus should be upon the whole record, not one specific document. "In determining whether a noncitizen is removable under § 1227(a)(2)(E)(ii), *the record must permit the agency to conclude that*" the requirements of § 1227(a)(2)(E)(ii) have been satisfied. *Jules v. Garland*, No. 23-6217-AG, 2024 WL 1252410, at *1 (2d Cir. Mar. 25, 2024) (unpublished summary order) (emphasis added). "Under the agency's own precedent, a state court must make the determination that [the alien] violated the protection order." *Id.* (citing *Matter of Obshatko*, 27 I. & N. Dec. 173, 176–77 (B.I.A. 2017)). Courts have considered evidence *other than* the protection order itself in determining that the government satisfied its burden under § 1227(a)(2)(E)(ii).[10]

---

[9]*See, e.g.*, *Alvarez*, 33 F.4th at 632 (2d Cir. 2022) (discussing contents of order); *Michel*, 2022 WL 1421163, at *1 (unpublished opinion) (discussing protection order); *Sunuwar*, 989 F.3d at 244 (noting protection order required noncitizen to refrain from abusing, harassing, or contacting victim; discussing contents of order on its face); *Diaz-Quirazco*, 931 F.3d at 835 (discussing petition for restraining order and order granting petition); *Rodriguez*, 876 F.3d at 282 (discussing form order). *But see Cespedes v. Lynch*, 805 F.3d 1274, 1278 (10th Cir. 2015) (construing protection order based on authorizing statute); *Garcia-Hernandez v. Boente*, 847 F.3d 869, 873 (7th Cir. 2017) (noting record of conviction indicated noncitizen was convicted of violating "stay away" portion of protection order).

[10]*See, e.g.*, *Garcia v. Wilkinson*, 847 F. App'x 50, 53 (2d Cir. 2021) (unpublished summary order) (considering "[t]he transcript of [the petitioner's] plea hearing in state court" in determining that the BIA did not err in finding the petitioner removable under § 1227(a)(2)(E)(ii)); *Garcia-Hernandez*, 847 F.3d at 872–73 (concluding that the agency properly "looked at documents *in the record of*

Tiah relies on *Jules* in support of his argument that § 1227(a)(2)(E)(ii) requires submission of the protection order itself. To the contrary, *Jules* demonstrates that it is the record evidence that a court examines to determine whether the government has satisfied its burden of proof. There, a New York state court had issued an order of protection against the petitioner prohibiting him from "communicating with, intimidating, stalking, or harassing a former girlfriend." *Jules*, 2024 WL 1252410, at *1. The petitioner was subsequently charged with offenses "for allegedly entering his ex-girlfriend's house in violation of the protection order." *Id.* He ultimately pleaded guilty to second-degree criminal contempt, in violation of New York Penal Law (NYPL) § 215.50. *Id.* The certificate of conviction, however, failed to "identify the subsection of NYPL § 215.50 to which [the petitioner] pleaded guilty"; this certificate of conviction was "the only state court document in the record." *Id.* The petitioner challenged the agency's finding of removability under § 1227(a)(2)(E)(ii), arguing that "his plea to second-degree criminal contempt did not require the state court to find that he had violated the protection order entered against him." *Id.*

The Second Circuit held that the government failed to carry its burden of proving by clear and convincing evidence that the petitioner was removable because it produced no evidence that "a court had determined that [the petitioner] violated a relevant portion of the protection order," as required by § 1227(a)(2)(E)(ii). *Id.* at *2. In sustaining the charge of removability, "[t]he agency mentione[d] only that [the petitioner's] conviction was 'premised on' his violation of the protection order." *Id.* Although "[t]he IJ reviewed the felony complaint, supporting deposition, domestic incident report and arrest report in finding [the petitioner] removable," *id.* (citation modified), neither these "prosecution documents" nor the conviction established by clear and convincing evidence that "*a court* determined that [the petitioner] 'engaged in conduct that violate[d] the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued,'"

---

*conviction* to determine the portions of the protection order that [the petitioner] was charged with and convicted of violating").

*id.* (second alteration in original) (quoting 8 U.S.C. § 1227(a)(2)(E)(ii)). In fact, the record showed that a "first-degree criminal contempt charge was withdrawn because the prosecution determined that it could not prove that [the petitioner] intended to harass, annoy, threaten or alarm the person for whose protection the order was issued." *Id.* (citation modified). There was no record evidence "about why the prosecution could not prove the initial charge or what crimes the state court concluded that [the petitioner] had actually committed." *Id.* In summary, the issue in *Jules* was not whether the actual protection order was required to sustain the charge but instead whether the government produced sufficient evidence to satisfy the requirements of § 1227(a)(2)(E)(ii).

Accordingly, we hold that the actual protection order is not required to sustain a charge of removability under § 1227(a)(2)(E)(ii). Instead, the question is whether the record establishes, by clear and convincing evidence, that the requirements of § 1227(a)(2)(E)(ii) are satisfied to sustain the charge of removability.

## B. *Clear and Convincing Evidence*

Because the actual protection order is not required to sustain a charge of removability under § 1227(a)(2)(E)(ii), we next examine whether the government proved by clear and convincing evidence that (1) the 2021 protection orders were issued against Tiah for the purpose of preventing violent or threatening acts of domestic violence; (2) a portion of the protection orders "involve[d] protection against credible threats of violence, repeated harassment, or bodily injury," 8 U.S.C. § 1227(a)(2)(E)(ii); and (3) a court determined that Tiah engaged in conduct that violated that portion of the protection order. *See Michel*, 2022 WL 1421163, at *2. We conclude that the text of N.D.C.C. § 12.1-31.2-02, in conjunction with the state-court docket reports, informations, police reports, and Tiah's own testimony satisfied the government's burden.

First, the evidence shows that the North Dakota state court issued the 2021 protection orders against Tiah to prevent violent or threatening acts of domestic violence. The state-court docket reports show that the pre-disposition protection

-15-

order was issued against Tiah on January 20, 2021, and that the post-disposition protection order was issued against him on June 4, 2021. A.R. 493. Tiah's testimony establishes that the protection orders were no-contact orders concerning "domestic violence." *See* 8 U.S.C. § 1227(a)(2)(E)(ii). Tiah admitted to the IJ that his wife Rose had obtained these no-contact orders against him. A.R. 255–57, 305, 306. The information filed in Case No. 09-2021-cr-00389 provides that the no-contact order prohibited Tiah from "c[o]m[ing] within 300 yards of Rose Tiah." *Id.* at 508. Tiah admitted that the January 20 protection order arose from his wife Rose telling police that he "terrorize[d] her, . . . wanted to fight her, [and] . . . pick[ed] [sic] a knife for her." *Id.* at 300. The docket report shows that Tiah ultimately pleaded guilty to disorderly conduct, A.R. 493, which criminalizes "engag[ing] in fighting, or in violent, tumultuous, or threatening behavior." N.D.C.C. § 12.1-31-01(1)(a).

The state court issued the protection orders against Tiah pursuant to N.D.C.C. § 12.1-31.2-02, titled "Order prohibiting contact." That provision provides that a person "charged with [or] arrested for . . . a crime of violence or threat of violence, stalking, harassment, or a sex offense" may be subject to "an order prohibiting the individual from having contact with the victim." N.D.C.C. § 12.1-31.2-02(1)(a).[11] The purpose of a protection order issued under this section is to prohibit an individual accused of a crime of violence from committing further crimes against the victim by prohibiting contact with that victim. *Cf. State v. Thesing*, 14 N.W.3d 574, 577 (N.D. 2024) ("The wording of the statute is unambiguous and allows a district court to issue a no contact order if an individual charged with a crime of violence and the court is considering whether the individual will be released from custody before arraignment or trial."). "Given the underlying facts, . . . there can be

---

[11]The BIA was incorrect in stating that because the protection order against Tiah was issued under N.D.C.C. § 12.1-31.2-02, the government established Tiah's removability under § 1227(a)(2)(E)(ii). This is because N.D.C.C. § 12.1-31.2-02 does not limit protection orders to "domestic violence." By contrast, § 1227(a)(2)(E)(ii) provides that "the term 'protection order' means any injunction issued for the purpose of preventing violent or threatening acts of domestic violence."

no question that the 20[21] order[s] w[ere] entered 'for the purpose of preventing violent or threatening acts of domestic violence.'" *Alvarez*, 33 F.4th at 646–47 (quoting 8 U.S.C. § 1227(a)(2)(E)(ii)).

Second, although the actual protection orders are not in the record, the evidence establishes that a portion of the protection orders "involve[d] protection against credible threats of violence, repeated harassment, or bodily injury." 8 U.S.C. § 1227(a)(2)(E)(ii). "[T]he no-contact provisions of a protection order inherently involve 'protection against credible threats of violence, repeated harassment, or bodily injury,' and therefore fall under § 1227(a)(2)(E)(ii)." *Sunuwar*, 989 F.3d at 248. Here, the evidence, as discussed *supra*, shows that the protection orders issued against Tiah were no-contact orders prohibiting him from coming within 300 yards of his wife Tiah. This element is sufficiently proven.

Finally, the evidence establishes that a court determined that Tiah engaged in conduct that violated the protection orders on two occasions.

> To satisfy this element, there is no requirement that the alien actually engage in violent conduct. Instead, the relevant inquiry is whether the alien's conduct violated the portion of the [protection order] designed to prevent violent conduct. Indeed, even an alien's benign conduct may violate the portion of a protection order designed to prevent violent conduct.
>
> In considering the third element, an agency may consider all probative and reliable evidence regarding what the court has determined about the alien's violation of the protection order. Such evidence may fairly include the criminal complaint, affidavit of probable cause, and other documents in the record of conviction.

*Michel*, 2022 WL 1421163, at *3 (citation modified).

Here, the docket reports show that Tiah was twice charged with "Violation of an order prohibiting contact," in violation of N.D.C.C. § 12.1-31.2-02(4). A.R. 495,

-17-

499. The information filed in Case No. 09-2021-cr-00389 charged that Tiah "willfully violated a court order prohibiting contact" by "c[o]m[ing] within 300 yards of Rose Tiah in violation of an order prohibiting contact." *Id.* at 508. The information in Case No. 09-2021-cr-01187 made a similar allegation. *Id.* at 516 ("The defendant willfully violated a court order prohibiting contact . . . regarding Rose Tiah . . . ."). Police reports detailed the conduct underlying both charges. *See id.* at 509, 517. The police report in Case No. 09-2021-cr-00389 stated that Tiah violated the no-contact order by "being in the home with the protected party, Rose Tiah, on the date of 1/25/2021, when he was located by officers." *Id.* at 509. The police report in Case No. 09-2021-cr-01187 stated that Tiah violated the no-contact order by "contacting Rose," which he "admitted to" doing. *Id.* at 517. Before the IJ, Tiah conceded that he had been in contact with his wife Rose despite the court's order prohibiting such contact. *Id.* at 301. The docket reports show that on May 21, 2021, Tiah pleaded guilty before the state court to both charges of violating the no-contact order. *Id.* at 442, 495. The state court entered criminal judgments in both cases, as reflected on the state-court docket reports. Thus, by accepting Tiah's guilty plea and entering judgment, the state court determined that Tiah engaged in conduct that violated the no-contact protection order.

III. *Conclusion*

Accordingly, we deny the petition for review.

_____